HAWKEYE BANCORPORATION; State Bank of Allison; Hawkeye-Ankeny Bank and Trust; the Citizens National Bank of Boone-Stratford; Hawkeye Bank and Trust, Burlington; Hawkeye Bank and Trust, Camanche; United State Bank, Cedar Rapids; Hawkeye Bank and Trust, National Association, Centerville; First State Bank, Chariton; First National Bank, Clinton; State Bank and Trust, Council Bluffs; Hawkeye-Capital Bank & Trust, Des Moines; Hawkeye Bank & Trust of Des Moines; Hawkeye Bank & Trust, Eldora; Farmers Savings Bank, Grundy Center; Hawkeye Bank and Trust, Humboldt; Hawkeye State Bank, Iowa City; Lake City State Bank; Hawkeye Bank & Trust, Lake Mills; Hawkeye Bank and Trust, Maquoketa; Commercial State Bank, Marshalltown; Hawkeye Bank & Trust of Mason City; Security State Bank, Mount Ayr; Hawkeye Bank and Trust, Mount Pleasant; Jasper County Savings Bank, Newton; the Pella National Bank; Houghton State Bank, Red Oak; Lyon County State Bank, Rock Rapids; the First National Bank of Sibley; Hawkeye Bank & Trust, Sioux City; Hawkeye Bank and Trust, Spencer; the National Bank of Washington; and Waukon State Bank, Appellees,

v.

IOWA COLLEGE AID COMMISSION, Appellant.

No. 84–193.

Supreme Court of Iowa.

Jan. 16, 1985.

Thomas J. Miller, Atty. Gen., and Merle Wilna Fleming, Asst. Atty. Gen., for appellant.

Robert F. Holz, Jr. of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellees.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

UHLENHOPP, Presiding Justice.

This case primarily involves the issue of whether the Iowa College Aid Commission (ICAC) must provide notice and hearing and must have cause in order to terminate the status of "eligible lender" under chapter 261 of the Iowa Code of 1966 and succeeding Codes. Our references are to the Code of 1983.

In May 1979, the State of Iowa created ICAC as a public guarantor of student loans pursuant to chapter 261 and an agreement with the United States Department of Education. Eligible financial institutions lend funds to students, and ICAC (or private non-profit corporations) guarantees the loans. United Student Aid Fund (USAF) services loans for ICAC.

Section 261.35(3) of the Code provides:
*"Eligible lender"* means a financial or credit institution, insurance company or other approved lender which meets the standards prescribed by the commission and has executed a lender participation agreement with the commission.
Section 261.36(6) provides that ICAC has power to
[a]pprove financial or credit institutions, insurance companies or other lenders as eligible lenders upon their meeting the standards established by the commission for making guaranteed loans.

In order to transact business with ICAC, Hawkeye Bancorporation (Hawkeye) obtained ICAC's approval of Hawkeye as an eligible lender and entered into a lender participation agreement with ICAC. The agreement stated in clause 12:
This Agreement may be terminated by either party upon not less than 60 days written notice to the other party. Such termination shall not affect any obligation incurred pursuant to this Agreement prior to the time that such termination notice becomes effective.

Through its banks and affiliates, Hawkeye operates an extensive student loan program. It has served as a tacit "lender of last resort" for ICAC, that is, Hawkeye has made loans to qualified students where other banks might refuse to do so based on their loan policies. Hawkeye has one program for Hawkeye banks (IHELP I) and another program for banks which are only affiliated with Hawkeye (IHELP II).

During the summer and fall of 1981, Hawkeye became dissatisfied with ICAC's loan servicer, USAF. Apparently USAF experienced difficulties in processing loans, resulting in some students being unable to obtain their funds. In addition, some thousands of applications became lost; some had to be duplicated while others had duplicate disbursements. Hawkeye repeatedly complained to ICAC about the delays and problems and specifically to ICAC's executive director, Willis Ann Wolff. Hawkeye alleges that Wolff was not receptive to its complaints and failed to do anything about USAF's problems; Wolff claims that she diligently followed up every complaint and sought to make processing easier.

In any event, Hawkeye eventually became so dissatisfied with the service that it sought to obtain student loan servicing and guaranteeing through a private non-profit institution, Higher Education Assistance Foundation (HEAF). ICAC contended that HEAF was not permitted to operate in the State of Iowa since the state had created ICAC. Eventually ICAC wrote to the United States Department of Education for confirmation of that view. The Secretary of Education responded, however, that in his department's opinion no exclusivity was involved and, on the contrary, that the de-

partment believed competition would be healthy.

Upon receipt of this information Hawkeye appeared to move toward HEAF exclusively. Michael Ralph, head of the IHELP programs, suggested that the tie with ICAC be cut totally. This however was vetoed by Hawkeye's board. Hawkeye changed direction and stated that it intended to handle loans both through HEAF and through ICAC and its servicer, USAF.

On September 3, 1982, a meeting was held by ICAC and Hawkeye representatives to discuss their problems. Disagreement exists as to the purpose of the meeting. Hawkeye witnesses testified they believed the meeting was an opportunity to discuss differences. ICAC witnesses, however, apparently believed that the meeting was a "last chance" attempt to pull the two parties together. The parties also disagree as to what transpired at the meeting. ICAC apparently found the meeting to be acrimonious to the point that its board voted to terminate the agreement designating Hawkeye as an eligible lender.

On November 5, 1981, Executive Director Wolff informed Hawkeye that ICAC was exercising the 60-day clause in its agreement with Hawkeye and was terminating their relationship.

Section 17A.12 of the Iowa Code, part of the Iowa Administrative Procedure Act, provides for contested administrative hearings in appropriate cases. Hawkeye demanded such a hearing. The hearing was scheduled and was subsequently continued until January 4, 1983. Hawkeye sought to enjoin ICAC from proceeding with the hearing. The district court denied an injunction on January 4, 1983, the hearing was held on that day, and ICAC reaffirmed its previous decision to terminate.

Hawkeye appealed to district court. That court found ICAC could not terminate Hawkeye as an eligible lender under the record made. ICAC then appealed to this court.

The appeal presents six issues for our consideration: first, whether Hawkeye has standing to challenge ICAC's decision terminating its status; second, whether the agreement between ICAC and Hawkeye was a license or a contract; third, whether a hearing on termination was required; fourth, whether "cause" is required to terminate or whether ICAC can terminate the agreement at will; fifth, whether cause was actually shown for terminating Hawkeye's status as an eligible lender; and sixth, whether the district court erred in considering the commission's motives as well as matters outside the record.

■ I. *Standing.* We have stated a two-pronged test for standing. *City of Des Moines v. PERB*, 275 N.W.2d 753, 759 (Iowa 1979). We require that the complaining party have a specific, personal, and legal interest in the litigation, and be injuriously affected. We have no doubt that Hawkeye meets the first prong of the test. Involved is an agreement between ICAC and Hawkeye directly concerning Hawkeye's ability to obtain service and guarantees of student loans through ICAC.

ICAC contends, however, that Hawkeye fails on the second prong—injury—since it can finance all of its loans through HEAF. In fact, ICAC urges, Hawkeye is not harmed at all since terms with HEAF are more lenient than those with ICAC.

We think ICAC misses the mark. The question is not whether Hawkeye can alternatively service all of its loans; the question is whether Hawkeye is injured by not being able to service loans through ICAC. Hawkeye contends it is harmed since it cannot accept applications executed by students on ICAC forms, causing confusion among students it services. Additionally, since the Hawkeye chain of banks is expanding, Hawkeye contends it needs the ability to take on the outstanding paper of an acquired bank which, because of the previous exclusivity of ICAC, has ICAC as the insurer of most or all of its student loans.

We find Hawkeye's contention to be sufficient. Unlike the federal courts, state courts are not bound by constitutional strictures on standing. With state courts, standing is a self-imposed rule of restraint. *City of Des Moines v. PERB*, 275 N.W.2d 753, 759 (Iowa 1979). We have also held that the likelihood of injury is sufficient to satisfy the second prong of the test. *Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 445 (Iowa 1983). We hold that Hawkeye has standing.

II. *Contract or license.* ICAC contends that its lender participation agreement with Hawkeye constitutes a contract and the 60-day termination clause in the agreement is part of the contract; therefore it can terminate Hawkeye's designation as eligible lender on 60-days notice for no reason at all.

In furtherance of this claim ICAC cites section 261.36(3) of the Code which gives ICAC power to:

> [M]ake and execute agreements, contracts and other instruments with any public or private person or agency including the United States Secretary of Education.

On the contrary, Hawkeye points to chapter 17A for authority that the agreement constitutes a license. Section 17A.2(3) defines a license thus:

> "License" includes the whole or a part of any agency permit, certificate, *approval*, registration, charter or similar form of permission required by statute.

(Emphasis added.) Section 261.36(6) states that ICAC has power to *"[a]pprove* financial or credit institutions ... upon their meeting the standards established by the commission for making guaranteed loans."* (Emphasis added.)

Hawkeye also cites section 261.35(3) which provides that an "eligible lender" is

> a financial or credit institution, insurance company or other approved lender which meets the standards prescribed by the commission and has executed a lender participation agreement with the commission.

Hawkeye thus argues that ICAC's approval of it and subsequent agreement with it constitute a license under chapter 17A in that the approval and agreement permit Hawkeye to participate with ICAC in making guaranteed student loans.

The legislature has the prerogative of defining its language. *Cedar Memorial Park Comm'n v. Personnel Associates, Inc.*, 178 N.W.2d 343, 346 (Iowa 1970). *See also* Bonfield, *Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 313 (1977). We hold that under the statutory definition, the agreement between ICAC and Hawkeye is a license since it constitutes agency approval. It is not merely a contract as the agreement gives Hawkeye the status of an eligible lender under section 261.35(3) and this in turn gives Hawkeye permission to deal with ICAC as guarantor of its student loans.

III. *Notice and hearing.* The decision on the previous issue determines most of the remaining issues. The next question is whether a hearing is statutorily or constitutionally required to terminate the parties' agreement. The issue is moot since ICAC did hold a hearing, but the parties urged us to pass upon the question because of its public importance. *Rush v. Ray*, 332 N.W.2d 325 (Iowa 1983). We acquiesce.

Section 17A.18(3) requires a hearing for the revocation, suspension, annulment, or withdrawal, in whole or in part, of a license. We hold that notice and hearing were necessary by virtue of the express provisions of that section.

IV. *Cause.* ICAC argues that it can terminate a participation agreement, such as the one between ICAC and Hawkeye, without cause. Two considerations lead us to the opposite conclusion. One consideration is section 17A.18(3) of the Code, which states in pertinent part:

> No revocation, suspension, annulment, or withdrawal, in whole or in part, of any license is lawful unless, prior to the institution of agency proceedings, the agency

gave written, timely notice by personal service as in civil actions or by restricted certified mail to the licensee of *facts or conduct and the provisions of law which warrant the intended action,* and the licensee was given an opportunity to show, in an evidentiary hearing conducted according to the provisions of this Chapter for contested cases, *compliance with all lawful requirements for the retention of the license.*

(Emphasis added.)

■ The second consideration is based on federal regulations and their Iowa counterpart. The United States Department of Education has established a procedure for terminating a guarantee agency, such as ICAC, upon finding cause to do so consisting of incomplete or incorrect statements in connection with an agreement or failure to comply with the agreement or with applicable federal law and regulations. 34 C.F.R. 682.400(c). Those regulations prescribe an initial 60-day written notice. 34 C.F.R. 682.400(D)(1)(i). This prescription is not for termination at will, for we also find that the

> [s]ecretary's suspension or termination of an agreement, requirement of reimbursement, or withholding of payments is not final until the guarantee agency has been given reasonable notice of the intended action and an opportunity for a hearing.

34 C.F.R. 682.400(d)(2).

The federal procedure is echoed in ICAC's rules found in its manual at division IV–D–1–13. ICAC there established a procedure for the termination, suspension, or limitation of a lender participation agreement. In the first unnumbered paragraph in this division, ICAC states that the procedure applies to

> [A] lender who violates any provision of Title IV, Part B of the Higher Education Act of 1965, as amended, governing the Guaranteed Student Loan Program and Parents Loan to Undergraduate Students, any violation of Chapter 261, Code of Iowa as amended governing the Iowa Guaranteed Student Loan Program and

the Parent Loans to Undergraduate Students Program, or any violation of rules and regulations governing the programs as set forth in this manual.

■ The federal 60-day notice clause and cause requirement, and the parallel Iowa 60-day notice clause in a participation agreement and the cause requirement stated in the manual, lead us to conclude that apart from section 17A.18(3) cause is required to terminate a participation agreement under chapter 261 and that the 60-day clause simply pertains to length of notice.

■ We hold that cause is required in the respects stated in division IV–D–1–13 of ICAC's manual.

V. *Showing of cause.* Review of division IV–D–1–13 of ICAC's manual reveals that a participation agreement may be terminated for (a) violation of the federal student loan act, (b) violation of chapter 261, or (c) violation of the rules in the manual.

The grounds given by ICAC in its decision terminating the participation agreement are these: (a) ICAC has an absolute right to terminate the agreement without cause by virtue of the 60-day clause in the agreement; (b) acquiring the status of eligible lender does not absolutely entitle a lender to an agreement that ICAC will serve as guarantor; (c) the hearing demonstrated that the termination is reasonable and justified; and (d) the reasons given in a letter by Wolff to counsel for Hawkeye on December 22, 1982.

We have held that ground (a) is not valid. Ground (b) is irrelevant in this case since Hawkeye already has a participation agreement and ICAC is seeking to terminate it. Ground (c) does not point out a violation of the federal act, the Iowa act, or the Iowa manual which permits termination of the agreement.

■ Ground (d) takes us to five reasons stated in Wolff's letter of December 22, 1982. The first is that ICAC could terminate "at will and without reason." We have held that contention to be invalid. The second is that before notice of termina-

tion, Hawkeye had indicated it intended to withdraw from the ICAC program. Assuming this is true, it does not constitute a violation of the federal or Iowa statute or the Iowa rules. Moreover, Hawkeye was free to change its mind before it surrendered its participation agreement. The third is that ICAC would not satisfy Hawkeye's demands relative to operation of ICAC's program. Assuming this is true, Hawkeye's demands did not violate the acts or rules. In addition, Hawkeye did not and does not govern ICAC. The fourth is that Hawkeye, by continuing as lender, could divert higher risk loans to ICAC and divert insurance fees to HEAF. This reason fails for want of substantial evidence in the record as a whole. Besides, Hawkeye could lawfully place as much business and such of its business with HEAF as it desired; we perceive nothing in the acts or rules which prohibit an eligible lender from placing its student loans and insurance among guarantors as it chooses. The fifth reason is that clear indications appeared Hawkeye harmed the ICAC program in the manner stated in the fourth reason. Again substantial evidence is wanting. On the contrary, the evidence shows that Hawkeye was a lender of last resort but its default ratio was nonetheless not unreasonable under the definition of ICAC. The sixth reason is that Hawkeye improperly attempted to interfere with the internal management of ICAC. This again is not a ground for termination. ICAC governed itself and was free to reject Hawkeye's suggestions. Substantial evidence does appear of poor administration by USAF, the service agency, which would naturally give rise to complaints and suggestions by Hawkeye.

We agree with the district court that although substantial inharmony between ICAC and Hawkeye was shown, cause for terminating Hawkeye's participation agreement does not appear. In fact, Hawkeye was in compliance with all requirements of the acts and rules.

The grounds for termination given by ICAC are affected by error of law or are unsupported by substantial evidence on the record as a whole. Section 17A.19(8)(e) and (f). Hence no reason exists for considering ICAC's charges that the district court examined ICAC's subjective reasoning and went beyond the record.

We uphold the district court's decision. AFFIRMED.