# IN THE SUPREME COURT OF IOWA

No. 94 / 05–1691

Filed June 20, 2008

**GERTRUDE K. GODFREY**,

Appellant,

vs.

**STATE OF IOWA**,

Appellee.

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Appellant seeks reversal of district court's dismissal of her claim for lack of standing. **AFFIRMED.**

Mark S. Soldat, West Des Moines, and Martin Ozga of Max Schott & Associates, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Julie F. Pottorff, Deputy Attorney General, and Grant K. Dugdale, Assistant Attorney General, for appellee.

Richard J. Sapp and John T. Clendenin of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae, Christopher J. Rants, as Speaker of the Iowa House of Representatives, Eighty-First General Assembly.

**CADY**, **Justice**.

This appeal involves a claim by a litigant that the Iowa legislature violated the single-subject rule of the Iowa Constitution in enacting a comprehensive statute during a special extraordinary legislative session in 2004. The district court concluded the litigant had no standing to assert the claim and dismissed the action without addressing the merits. On appeal, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

On September 7, 2004, the Iowa General Assembly met at the State Capitol for a special one-day, extraordinary legislative session. *See* Iowa Const. art. IV, § 11 ("[The governor] may, on extraordinary occasions, convene the general assembly by proclamation, and shall state to both houses, when assembled, the purpose for which they shall have been convened."). The legislature promptly approved House File 2581, 80th G.A., 1st Extraordinary Sess., § 11, and the measure was signed into law by Governor Thomas J. Vilsack. *See* 2004 Iowa Acts ch. 1001.

The special session followed our decision in *Rants v. Vilsack*, 684 N.W.2d 193 (Iowa 2004). In that case, we held the governor had no authority under the constitution to line-item veto portions of a bill passed by the legislature in 2003. *Rants*, 684 N.W.2d at 207–10. We further held that the exercise of the power by the governor operated, under our constitution, to veto the entirety of the bill. *Id.* at 210–12. The background of the bill (H.F. 692) was chronicled in our decision, and the bill was widely considered to be an important governmental initiative to stimulate and develop the state's economy. *Id.* at 197–98. The legislation was complex and lengthy, but generally created and funded an Iowa values fund and included provisions for tax and regulatory

reform. *Id.* The values fund was the focal point of the legislation. The provisions vetoed by the governor mostly dealt with changes in the tax code, products liability legislation, and workers' compensation, as well as various provisions the governor believed would disrupt the operation of the Department of Economic Development and the governor's office. *Id.*

On August 27, 2004, two months after we declared the 2003 bill never passed into law due to the exercise of the line-item veto, Governor Vilsack issued a proclamation for an extraordinary session of the General Assembly to address the Iowa Values Fund and matters relating to the economic security of Iowa. The governor outlined the items—to be addressed at the special session—that he would sign into law. Ultimately, a single bill was proposed through a compromise and the efforts of the governor and the General Assembly. The bill covered nine points or divisions: (1) The Endow Iowa Grants Program; (2) statutes governing supersedeas bonds; (3) workers' compensation laws; (4) the Iowa Consumer Credit Code; (5) the Loan and Credit Guarantee Program; (6) interest earned on the Unemployment Compensation Reserve Fund; (7) marketing strategies to expand and stimulate the state economy; (8) accelerated bonus depreciation and expensing allowance for businesses; and (9) re-creation of the Grow Iowa Values Board, the Economic Development Marketing Board, and the Loan and Credit Guarantee Advisory Board. 2004 Iowa Acts ch. 1001.

A separate appropriation bill funded contracts under the special legislation and approved the projects previously approved by the Iowa Values Fund Board prior to the date House File 692 was declared unconstitutional.

The title to the bill read:

> **AN ACT** concerning regulatory, taxation, and statutory requirements affecting individuals and business relating to economic development, workers' compensation, financial services, unemployment compensation employer surcharges, income taxation bonus depreciation and expensing allowances, and civil action appeal bonds, and including effective date, applicability, and retroactive applicability provisions.

*Id.* The division of the bill dealing with workers' compensation included a provision that changed compensation benefits for successive injuries. *Id.* § 11.

On October 4, 2003, Gertrude K. Godfrey filed a petition for declaratory judgment and injunctive relief in district court against the State. Godfrey is a resident of Sioux City and a taxpayer in this state. She also received workers' compensation benefits in the past based on two prior work-related injuries. She sustained an injury to her knee in 2001 and an injury to her lower back in April 2004. Godfrey claimed House File 2581 violated the single-subject rule of article III, section 29 of our state constitution. She asked the law be declared unenforceable.

The district court denied injunctive relief and ultimately dismissed her petition. It held Godfrey had no standing to bring the claim, and the court refused to rule on the merits of her claim that the bill was unconstitutional in violation of the single-subject rule.

Godfrey filed a notice of appeal. On appeal, she claims she had standing to bring the action based on her status as a citizen, taxpayer, and a potential workers' compensation claimant. She also asserts she should be exempted from the general requirement of standing based on the important public interest presented by her claim. In addition, Godfrey asks the merits of her claim be addressed on appeal.

## II. Standard of Review.

We review claims based on a violation of our state constitution de novo. *Kistler v. City of Perry*, 719 N.W.2d 804, 805 (Iowa 2006). We review a decision by the district court to dismiss a case based on the lack of standing for errors at law. *Birkhofer ex rel. Johannsen v. Birkhofer*, 610 N.W.2d 844, 847 (Iowa 2000).

## III. Justiciability of a Claim the Legislature Violated the Single-Subject Rule of the Iowa Constitution in Enacting a Statute.

Courts have traditionally been cautious in exercising their authority to decide disputes. As a result, a variety of rules of self-restraint have been developed over the years, one of which has surfaced in this case. Generally, courts refuse to decide disputes presented in a lawsuit when the party asserting an issue is not properly situated to seek an adjudication. *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864 (Iowa 2005). This doctrine is now called standing, although it began to develop as a doctrinal rule long before a designation of its title.[1] Today, the doctrine not only serves to limit which persons may bring a lawsuit, but

---

[1]Our first case to use the word "standing" in the context of a challenge to the right to sue was *Iowa Life Insurance Co. v. Black Hawk County*, 190 Iowa 777, 180 N.W. 721 (1921). In that case, we applied the rule that a party who seeks to challenge a statute must show the statute infringed upon a personal right. *Iowa Life Ins. Co.*, 190 Iowa at 782, 180 N.W. at 722–23. However, the word "standing" was actually used only as a synonym for the "right" to sue, not as a doctrinal heading. *Id.* The substantive rule was developed in earlier cases without using the word "standing." *See State v. Nebraska Tel. Co.*, 127 Iowa 194, 197, 103 N.W. 120, 121 (1905) (expressing rule that a party cannot challenge the constitutionality of a statute unless personal rights were affected). Similarly, the doctrine of standing developed in federal courts prior to the time it developed its doctrinal label. *See* William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 225–26 (1988). One of the first cases to use the word "stand" in a context of the right to sue was *Mississippi & Missouri R.R. v. Ward*, 67 U.S. (2 Black) 45, 491 (1862). In that case, the defendant argued the plaintiff did not "stand" in a position to bring the lawsuit. As with federal law, the origins of our modern doctrine of standing can be traced to the administrative law movement that surfaced in the last half of the twentieth century, as well as the accompanying growth of public-interest litigation—primarily geared at the enforcement of constitutional values—that began to sweep the country. Fletcher, 98 Yale L.J. at 225–28.

it has developed into a larger cultural doctrine, concerned with the " 'role of the courts in a democratic society.' " *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556, 569 (1984) (quoting *Worth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343, 354 (1975)).

We have frequently described our test for standing by identifying two elements. A plaintiff " 'must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected.' " *Alons*, 698 N.W.2d at 864 (quoting *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004)). While these two elements frame the essence of our standing doctrine, they were derived from earlier cases involving challenges to administrative agency action and do not fully capture the later development of our doctrine, especially as to actions to enforce public constitutional values by private individuals. *See City of Des Moines v. PERB*, 275 N.W.2d 753, 759 (Iowa 1979) (adopting the twofold test of standing derived from administrative agency cases involving statutes modeled after the Model State Administrative Procedure Act); John C. Reitz, *Standing to Raise Constitutional Issues*, 50 Am. J. Comp. L. 437, 442–43 (2002). We have frequently supplemented and elaborated on these elements by drawing on the federal law on standing. *See Alons*, 698 N.W.2d at 869 (recognizing federal authority on standing to be persuasive); *Sanchez v. State*, 692 N.W.2d 812, 821 (Iowa 2005) (citing federal test for standing with approval). In fact, our doctrine on standing parallels the federal doctrine, even though standing under federal law is fundamentally derived from constitutional strictures not directly found in the Iowa Constitution. *See Alons*, 698 N.W.2d at 867, 869 (recognizing the power of federal courts to decide cases is restricted by the "cases" and

"controversies" clause of article III). Most all jurisdictions around the country share prudential restrictions on judicial action based on policy grounds that help explain a general, compatible approach to standing. *See Reitz*, 50 Am. J. Comp. L. at 459–61 (recognizing "most states" essentially follow the federal-standing doctrine, but also citing differences in state and federal law). Thus, we return to our general two-prong test of standing to consider how it has been more fully augmented by parallel federal law, as well as our own cases, over the years.

We have previously recognized our two elements of standing are separate requirements. *Alons*, 698 N.W.2d at 864 ("Having a legal interest in the litigation and being injuriously affected are separate requirements."). However, we acknowledge these elements have much in common and often are considered together. The first element—the plaintiff has a specific personal or legal interest—is aligned with the general concept of standing that a party who advances a legal claim must have a special interest in the challenged action, "as distinguished from a general interest." *City of Des Moines*, 275 N.W.2d at 759. The second requirement—the plaintiff must be injuriously affected—means the plaintiff must be "injured in fact." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 2417 n.14, 37 L. Ed. 2d 254, 270 n.14 (1973) (stating "injury in fact" reflects the requirement under the administrative procedure act that the person be "adversely affected," and "it serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem"). This requirement recognizes the need for the litigant to show some "specific and perceptible harm" from the challenged action, distinguished from those

citizens who are outside the subject of the action but claim to be affected. *Id.*

This two-prong Iowa test parallels the landmark test established in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970). In that case, the Court abandoned the traditional "legal interest" test for standing. *Data Processing*, 397 U.S. at 153, 90 S. Ct. at 830, 25 L. Ed. 2d at 188. This restrictive test essentially required a litigant to satisfy standing by showing some personal interference with a common-law, statutory, or constitutional right. *Id.* In its place, the Court adopted a more expansive twofold test for the complaining litigant to allege both an "injury in fact" and that "the interest sought to be protected by the complainant to be arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.*

Since *Data Processing*, the Supreme Court has mentioned the "zone of interest" portion of the test infrequently, and has instead developed an expansive body of law of standing under the injury-in-fact component of the test. *See* Fletcher, 98 Yale L.J. at 257–58. The corpus of law surrounding the injury-in-fact element has essentially identified the various types of injuries that support standing under this criterion. *See* F. Andrew Hessick, *Standing, Injury in Fact, and Private Rights*, 93 Cornell L. Rev. 275, 276–77, 290–99 (2008). Nevertheless, it is clear the "zone of interest" element is not a continuation of the old "legal interest" test for standing, and this element does not relate to the legal merits of the claim. *Data Processing*, 397 U.S. at 153, 90 S. Ct. at 830, 25 L. Ed. 2d at 188. If anything, the approach followed by the United States Supreme Court reveals the injury-in-fact requirement is frequently suitable to resolve most constitutional claims, while the zone-of-interest

test continues to influence administrative agency claims. *See Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400 n.16, 107 S. Ct. 750, 758 n.16, 93 L. Ed. 2d 757, 769 n.16 (1987) (observing "zone of interest" test is infrequently used outside claims under the administrative procedure act).

Although we continue to spotlight both elements of the test when presented with an issue of standing, we have slightly altered the first requirement of our two-prong test to show a personal or legal interest to better conform to the federal test. Prior to *Citizens for Responsible Choices*, the first element required the plaintiff to have a specific, "personal, *and* legal interest." *Hawkeye Bancorp. v. Iowa Coll. Aid Comm'n*, 360 N.W.2d 798, 801 (Iowa 1985) (emphasis added). Consequently, we began to refer to claims by litigants to enforce public interests as an exception to the "personal and legal interest" requirement. *See Alons*, 698 N.W.2d at 864–65. However, in *Citizens for Responsible Choices*, we changed the conjunctive "and" to "or," which correctly revealed that the interest involved can either be personal or legal. *See id.* at 863–64. This change aligned our test with the approach taken in *Data Processing* that standing does not depend on the legal merits of a claim. *See Citizens for Responsible Choices*, 686 N.W.2d at 475. Instead, the legal-interest component of the test remains a part of our Iowa law on standing, but only as an alternative to the personal-interest component of the test.

A consequence of identifying alternative tests under our first element of standing is that it is unnecessary for us to continue to consider standing involving claims to enforce public rights as a "public interest" exception to our former narrow rule (requiring that a litigant must establish both a personal interest and a legal interest to establish

standing). *See Alons*, 698 N.W.2d at 865–69. Instead, cases involving actions by private persons to enforce public rights may be brought under the personal-interest alternative to the first element. In other words, this approach brings our rule into alignment with the approach taken by federal courts and allows us to focus on the factual-injury element of standing by considering the types of injuries a litigant must show to satisfy the test. This approach has been especially significant in cases involving actions to vindicate the public interest through challenges to governmental action. We no longer require the litigant to allege a violation of a private right and do not require traditional damages to be suffered. Instead, we require the litigant to allege some type of injury different from the population in general. A good example of our approach is found in *Hurd v. Odgaard*, 297 N.W.2d 355 (Iowa 1990).

In *Hurd*, two lawyers who were users of the county courthouse brought a mandamus action to compel the county to repair the crumbling, decaying building. 297 N.W.2d at 356. In addressing standing, we flatly rejected the notion that monetary or traditional damages were required to be shown by a private litigant to support standing to enforce the public interest at stake. *Id.* at 357. Instead, we found that the factual-injury component to support standing could be derived from intangible, noneconomic interests. *Id.* at 358. While the lawyers were identified as citizens and taxpayers with an interest in the safety and maintenance of the building, their status as users of the building is what actually gave rise to the identifiable injury to support standing. *Id.* As citizens who use the courthouse "to pay taxes, obtain licenses, record instruments, and attend court," the lawyers had an individual interest in the safety and conservation of the building that was directly affected by the alleged inaction by the county. *Id.* Thus,

litigants who share intangible interests "in common with all other citizens" must also identify some individual connection with the affected subject matter to satisfy the injury-in-fact requirement. This injury component, of course, captures more than economic loss and includes conservational and other intangible interests.

This same broad approach to the injury requirement can be observed in cases involving claims by private litigants of illegal action by government that theoretically results in marginally higher taxes to the litigant or some similar tax burden. In *Richards v. Iowa Department of Revenue & Finance*, 454 N.W.2d 573 (Iowa 1990), we held a taxpayer had standing to challenge a decision to grant a property tax exemption to a private, nonprofit community living center for the elderly because the decision had the effect of placing a greater tax burden on the litigant. 454 N.W.2d at 576. Similarly, in *Elview Construction Co. v. North Scott Community School District*, 373 N.W.2d 138 (Iowa 1985), we held an individual taxpayer who lived in the school district had standing to challenge the actions of a school district in awarding construction contracts allegedly in violation of bidding procedures. 373 N.W.2d at 142. Even though the bidding statutes exist to protect the public in general, an individual injury to support standing is recognized to exist for taxpayers who pay for the construction project. *Id.*

On the other hand, our recent case of *Alons* illustrates that not all intangible interests satisfy the injury-in-fact requirement. In that case, we held that a general, abstract grievance concerning the authority of the district court to terminate a civil union between two women was insufficient to support standing in an action by married citizens, taxpayers, a pastor and church, and state and federal legislators. *Alons,*

698 N.W.2d at 870. The claimants only identified a general interest in the issue, not an injury in fact.

The United States Supreme Court has also drawn the line at "abstract" claims. In particular, the Court has consistently rejected standing based on the general interest of a litigant in having government act pursuant to the law. *Allen*, 468 U.S. at 754, 104 S. Ct. at 3326, 82 L. Ed. 2d at 571 (denying standing to bring a claim for an " 'abstract injury in nonobservance of the Constitution' " (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 223 n.13, 94 S. Ct. 2925, 2933 n.13, 41 L. Ed. 2d 706, 720 n.13 (1974))). Such claims present only a generalized grievance because " 'all citizens [have an interest] in constitutional governance.' " *Whitmore v. Arkansas*, 495 U.S. 149, 160, 110 S. Ct. 1717, 1725, 109 L. Ed. 2d 135, 148 (1990) (quoting *Schlesinger*, 418 U.S. at 217, 94 S. Ct. at 2930, 41 L. Ed. 2d at 716) (holding citizen had no standing to bring an Eighth Amendment challenge to the execution of another person because the lawsuit only alleged a general interest in government acting in compliance with the Constitution). Likewise, psychological and mental injuries caused by the failure of government to obey the Constitution do not support standing. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–86, 102 S. Ct. 752, 765–66, 70 L. Ed. 2d 700, 718 (1982); *see Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1180 (7th Cir. 1998) ("If unease on observing wrongs perpetrated against others were enough to support litigation, all doctrines of standing and justiciability would be out the window."). A specific invasion of a right "must be suffered" by the litigant. *Schlesinger*, 418 U.S. at 224 n.14, 94 S. Ct. at 2394 n.14, 41 L. Ed. 2d at 721 n.14.

While both Iowa and federal case law on the application of standing to public-interest litigation has largely focused on the type of factual injury required to support standing, federal law has also developed additional elements that are particularly applicable when the "asserted injury arises from government's allegedly unlawful regulation (or lack of regulation) of someone else," as opposed to cases in which the "plaintiff is himself an object of the action (or foregone action) at issue." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351, 364–65 (1992). Under such a circumstance, the plaintiff must establish "a causal connection between the injury and the conduct complained of" and that the injury is " 'likely,' as opposed to merely 'speculative,' to be 'redressed by a favorable decision.' " *Id.* at 561–62, 112 S. Ct. at 2136, 119 L. Ed. 2d at 364–65 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41–42, 96 S. Ct. 1917, 1926, 48 L. Ed. 2d 450, 460 (1976)). These two additional considerations largely relate to the prudential concerns we have recognized, and we too have relied on them to resolve standing claims in the past. For example, in *Citizens for Responsible Choices*, we were presented with an action by a group of citizens who sought a declaration that a public-improvement project was illegal because the bonds to finance the project were allegedly issued in violation of the law. 686 N.W.2d at 472. The project included the construction of a recreational lake and park on land owned or rented by the citizens. *Id.* We held the citizens group had no standing to challenge the action in the issuance of the revenue bonds because the injury claimed came from the project itself, not the governmental action in the issuance of the bonds. *Id.* at 475. To borrow from the federal language, the injury was not "fairly traceable" to the challenged action. *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136, 119 L. Ed. 2d at 364.

With this legal framework in mind, we turn to the arguments raised by Godfrey to support standing. Godfrey first characterizes her claim as one to seek redress for a personal injury based on the substantive workers' compensation provisions contained in the legislation claimed to have been enacted by the legislature in violation of our constitution. She claims these provisions will limit any future amount of benefits she would recover in the event she sustains another work-related injury in the future. Thus, she presents herself as the object of the legislative action. She claims this action caused a personal injury and that the injury can be redressed by declaring the statute to be unconstitutional.

Godfrey acknowledges the impact and meaning of the statute at issue is uncertain and that her claim of a future injury is based on her own interpretation of the statute.[2] She admits the courts must

---

[2]The statute, Iowa Code section 85.34, provides:

> 7. Successive disabilities.
>
> *a.* An employer is fully liable for compensating all of an employee's disability that arises out of and in the course of the employee's employment with the employer. An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment with a different employer or from causes unrelated to employment.
>
> *b.* If an injured employee has a preexisting disability that was caused by a prior injury arising out of and in the course of employment with the same employer, and the preexisting disability was compensable under the same paragraph of section 85.34, subsection 2, as the employee's present injury, the employer is liable for the combined disability that is caused by the injuries, measured in relation to the employee's condition immediately prior to the first injury. In this instance, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer.
>
> If, however, an employer is liable to an employee for a combined disability that is payable under section 85.34, subsection 2, paragraph "u", and the employee has a preexisting disability that causes the employee's earnings to be less at the time of the present injury than if the prior injury had not occurred, the employer's liability for the

ultimately interpret the meaning of the statute, and she makes no claim of injury based on a denial of an opportunity to challenge the interpretation of the statute in the future in the event she actually suffers another work-related injury. This circumstance can impact a variety of factors, including the speculativeness of the injury now alleged.

Nevertheless, we acknowledge that the loss of workers' compensation benefits by a litigant is the type of injury that would give rise to standing. We also recognize that we have said, "[o]nly a likelihood or possibility of injury need be shown" to support standing. *Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 445 (Iowa 1983). Yet, the injury cannot be "conjectural" or "hypothetical," but must be "concrete" and "actual or imminent." *Alons*, 698 N.W.2d at 867–68. In *Iowa Bankers Ass'n*, the injury alleged to support standing involved the competitive interests of banks affected by agency rules that were claimed to give a competitive advantage to credit unions. 335 N.W.2d at 444. The likelihood of injury was demonstrated by allegations that some banks had actually lost business in the past as a result of the agency rules. *Id.* Importantly, the prior loss of business supported the likelihood of an imminent injury to support standing. *Id.* at 444–45.

In this case, Godfrey claims a future injury based solely on her status as a worker with a prior work-related injury covered by the

___

combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer minus the percentage that the employee's earnings are less at the time of the present injury than if the prior injury had not occurred.

    *c.* A successor employer shall be considered to be the same employer if the employee became part of the successor employer's workforce through a merger, purchase, or other transaction that assumes the employee into the successor employer's workforce without substantially changing the nature of the employee's employment.

workers' compensation statute. Yet, this status does nothing to establish the likelihood of an actual or immediate threat of another covered injury. There is nothing to show that the future injury is not merely theoretical. In fact, the injury asserted by Godfrey is the same type of future injury that fell short of establishing standing in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). There, the Court found a plaintiff who had been arrested by police and subjected to a life-threatening choke hold that had been approved for use by police under a department policy had no standing to seek an injunction to prohibit the future use of the choke hold by police. *Lyons*, 461 U.S. at 111, 103 S. Ct. at 1670, 75 L. Ed. 2d at 690. The Court found the plaintiff failed to demonstrate any immediate or continuing injury based on the prior injury. *Id.* As in *Lyons*, Godfrey's claim of injury lacks any immediacy to support standing to raise a constitutional claim. The important fact is that Godfrey's prior status as a worker who has suffered a prior work-related injury does not make it any more likely that she will suffer another injury in the future.

Godfrey next asserts standing to challenge the alleged constitutional deficiency in the legislation as a citizen and a taxpayer. Godfrey claims citizens are legally injured when the legislature passes a statute in violation of the constitution. In the same way, she argues her status as a taxpayer allows her to vindicate the public interest in seeing that the laws are properly enacted without demonstrating any pecuniary damage.

While some legal challenges to governmental action can be examined under theories of citizen and taxpayer standing, the litigant must still demonstrate some personal injury connected with the alleged unconstitutional act. A litigant cannot claim standing to challenge the

actions of government based only on his status as a citizen. *Alons*, 698 N.W.2d at 865. In *Hurd*, the citizen-taxpayer litigants at least established they were users of the government resource allegedly subject to damage by inaction of the county. 297 N.W.2d at 358. The user status of the litigants is what linked them to the affected building so as to establish the necessary individual injury to support standing. A general interest shared by all citizens in making sure government acts legally is normally insufficient to support standing without such a link. *See United States v. Richardson*, 418 U.S. 166, 179–80, 94 S. Ct. 2940, 2948, 41 L. Ed. 2d 678, 689–90 (1974) (holding citizens lacked standing to challenge statute when all citizens affected in the same way). Similarly, a taxpayer acquires standing by showing some link between higher taxes and the government action being challenged. *See, e.g., Elview Constr. Co.*, 373 N.W.2d at 142.

While a citizen or taxpayer does not need to show pecuniary damage, or some other traditional damage, some personal injury must be demonstrated. In this case, Godfrey claims nothing more than the general vindication of the public interest in seeing that the legislature acts in conformity with the constitution. This is an admirable interest, but not one that is alone sufficient to establish the personal injury required for standing.

Godfrey next argues she has standing as a private litigant to assert the rights of nonparty workers' compensation claimants who are, in fact, injured under the statute. She argues she is the only litigant in Iowa who is able to assert a constitutional challenge to the statute because the window of opportunity for other litigants to file a single-subject challenge has passed. *See State v. Mabry*, 460 N.W.2d 472, 475 (Iowa 1990)

(holding no single-subject challenge to a statute may be brought after the act is codified).

Third-party standing normally requires a litigant to establish the parties not before the court, who have a direct stake in the litigation, are either unlikely or unable to assert their rights. *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 1370, 113 L. Ed. 2d 411, 425 (1991). Even if we assume the expiration of the narrow window of time to assert a single-subject challenge meets this test, standing to bring actions on behalf of third parties still requires the litigant to establish a personal injury or stake in the application of the challenged statute. *Id.* at 410–11, 111 S. Ct. at 1370–71, 113 L. Ed. 2d at 425 (providing that to establish third-party standing, litigant must have suffered an "injury in fact" so as to give the litigant a sufficient concrete interest in the outcome of the dispute); *ICLU v. Critelli*, 244 N.W.2d 564, 567 (Iowa 1976) (holding Iowa Civil Liberties Union and lawyers lacked standing to maintain action to challenge a supervisory order of the court pertaining to the trial of criminal cases—only defendants in the criminal cases had standing). This critical element is not eliminated in third-party standing cases and has not been demonstrated in this case.

Finally, Godfrey asks that we create an exception to our standing doctrine that waives the requirement of standing in exceptional circumstances involving issues of great public importance. Godfrey claims her case presents such an exceptional circumstance and that we should decide the constitutional question presented based on the fundamental necessity of ensuring that the executive and legislative branches of government do not overstep their constitutional limitations and suppress the liberties of the people.

While Iowa, like many states, essentially follows the federal doctrine on standing, states generally have greater freedom to develop exceptions or to otherwise modify the doctrine on public-policy grounds. As a self-imposed rule of restraint we, like other states, are free to shape the doctrine into a form that best meets the concerns and ideals of our role in the overall operation of government. *See Hawkeye Bancorp.*, 360 N.W.2d at 802.

A number of states do permit litigants to raise issues of great importance and interest to the public as a narrow exception to the standing requirement. *See Sears v. Hull*, 961 P.2d 1013, 1020 n.11 (Ariz. 1998) (citing additional jurisdictions); *State ex rel. Ohio Acad. of Trial Lawyers v. Sheward*, 715 N.E.2d 1062 (Ohio 1999); *Sloan v. Wilkins*, 608 S.E.2d 579 (S.C. 2005). At least one state has even applied the exception to a challenge to a broad economic development statute claimed to be enacted in violation of the single-subject requirement of the state constitution. *Sloan*, 608 S.E.2d at 583.

We believe our doctrine of standing in Iowa is not so rigid that an exception to the injury requirement could not be recognized for citizens who seek to resolve certain questions of great public importance and interest in our system of government. In fact, we have previously expressed a willingness to recognize a public-policy exception at the time our standing rule was viewed to require a legal injury. *Alons*, 698 N.W.2d at 864–65; *see Exira Cmty. Sch. Dist. v. State*, 512 N.W.2d 787, 790 (Iowa 1994) (mentioning an argument based on the great public importance exception to standing, but not considering it). Moreover, our doctrine of self-imposed restraint was not created to keep us from deciding critical public issues of the day, but was built upon a foundation of prudential policies to promote the effective operation of our

courts and to define the proper role of the courts within our democratic society. Thus, an exception to standing that conforms to the underlying rationale for the doctrine should be recognized. On the other hand, we cannot allow standing to transform into a loose doctrine. A principled approach is required. Accordingly, the question in this case is whether the circumstances alleged by Godfrey are sufficient to support such an exception.

We begin our consideration of an exception to the standing requirement cognizant of the policies that drive the standing rule. In a broad sense, standing is deeply rooted in the separation-of-powers doctrine and the concept that the branch of government with the ultimate responsibility to decide the constitutionality of the actions of the other two branches of government should only exercise that power sparingly and in a manner that does not unnecessarily interfere with the policy and executory functions of the two other properly elected branches of government. *See Allen*, 468 U.S. at 750, 104 S. Ct. at 3324, 82 L. Ed. at 569. While this policy of standing has no specific constitutional basis in Iowa, as it does in federal law, it is compatible with the overall constitutional framework in this state and properly reflects our role in relationship to the other two coequal branches of government. This ultimate power to decide disputes between the other branches of government and to determine the constitutionality of the acts of the other branches of government does not exist as a form of judicial superiority, but is a delicate and essential judicial responsibility found at the heart of our superior form of government. We have the greatest respect for the other two branches of government and exercise our power with the greatest of caution.

Additionally, standing exists to ensure litigants are true adversaries, which theoretically allows the case to be presented to the court in the most effective manner. *See Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663, 678 (1962); Fletcher, 98 Yale L.J. at 222. Similarly, standing helps ensure that the people most concerned with an issue are in fact the litigants of the issue. Fletcher, 98 Yale L.J. at 222. Standing also ensures that a real, concrete case exists to enable the court to feel, sense, and properly weigh the actual consequences of its decision. *Id.* These policies drive our application of standing and must be kept in the forefront as we consider circumstances to support an exception or waiver of the standing requirement.

We next examine the issue presented. The claim in this case is that the legislature violated the single-subject rule of article III, section 29 in enacting House File 2586. The constitutional provision at issue provides, in part:

> Every act shall embrace but one subject, and matters properly connected therewith; which shall be expressed in the title.

Iowa Const. art. III, § 29. This single sentence contains two separate provisions derived from independent historical bases. *Long v. Bd. of Supervisors*, 258 Iowa 1278, 1286, 142 N.W.2d 378, 383 (1966); *see* 1A Norman J. Singer, *Statutes and Statutory Construction* § 17:1, at 5 (6th ed. 2000) ("The prohibition against the inclusion of more than one subject or object in the same act is invariably joined in the same constitutional passage, often in the same sentence, with a requirement that the subject or object be expressed in the title. They are, however, separate and independent provisions, serving distinct constitutional

purposes.") [hereinafter Singer]. Each provision serves distinct constitutional purposes. *Long*, 258 Iowa at 1286, 142 N.W.2d at 383.

The first provision is referred to as the single-subject requirement. It exists to "facilitate concentration on the meaning and wisdom of independent legislative proposals or provisions." Singer, at 5; *Giles v. State*, 511 N.W.2d 622, 625 (Iowa 1994) (single-subject requirement keeps legislators apprised of pending bills); *Long*, 258 Iowa at 1286, 142 N.W.2d at 383 (single-subject rule provides for an orderly legislative process and allows the legislature to better grasp and more intelligently discuss legislative proposals). The requirement forces "each legislative proposal to stand on its own merits by preventing the 'logrolling' practice of procuring diverse and unrelated matters to be passed as one 'omnibus'" due to "the consolidated votes of the advocates of each separate measure, when no single measure could have been passed on its own merits."[3] Singer, at 5; *see Long*, 258 Iowa at 1286, 142 N.W.2d at 383. Likewise, the single-subject rule "prevents the attachment of undesirable 'riders' on bills certain to be passed because of their popularity or desirability."[4] Singer, at 5–6; *see Giles*, 511 N.W.2d at 625 (explaining the single-subject rule discourages passage of unfair

---

[3]Unlike most state constitutions, the United States Constitution does not contain a single-subject rule. *See* Brent R. Appel, *Item Veto Litigation in Iowa: Marking the Boundaries Between Legislative and Executive Power*, 41 Drake L. Rev. 1, 5 (1992). Consequently, "logrolling" is most commonly associated with federal legislation, under additional labels of "earmarks" and "pork barreling." Evidence of this practice is frequently exposed by public interest groups. *See* Stephanie Hauffer & Travis McDade, *Of Disunity and Logrolling: Ohio's One-Subject Rule and the Very Evils it Was Designed to Prevent*, 51 Clev. St. L. Rev. 557, 558 n.11 (2004).

[4]In *Giles*, we indicated that another purpose of the single-subject rule was to "alert[] citizens to matters under legislative consideration." 511 N.W.2d at 625. This reason, however, is more closely aligned with the rationale for the companion rule that the subject of a bill must be expressed in its title and is not identified as a primary reason for the single-subject rule in our earlier cases. *See Long*, 258 Iowa at 1286, 142 N.W.2d at 383. Instead, the single-subject rule is viewed to complement and assist the title-requirement purpose of eradicating stealth legislation. *Id.*

legislation on the coattails of more favorable proposals); *Long*, 258 Iowa at 1286, 142 N.W.2d at 383.

The second provision requires the subject of a bill to be expressed in the title. The primary purpose of this provision is to provide reasonable notice of the purview of the act to the legislative members and to the public. *Giles*, 511 N.W.2d at 625; Singer, at 40–41. The title provides an easy "means for concerned parties to find out what a bill or act is about without reading it in full." Singer, at 5. The provision ultimately serves to prevent surprise and fraud from being visited on the legislature and the public. *Long*, 258 Iowa at 1286, 142 N.W.2d at 383. Thus, the title requirement is directed more to the integrity of the legislative process by preventing laws from being surreptitiously passed with "provisions incongruous with the subject proclaimed in the title." Singer, at 50; *see Long*, 258 Iowa at 1286, 142 N.W.2d at 383 (title provision primarily directed at legislative process). It surfaced as a constitutional requirement as a result of public demand derived from a prevailing sense that bills giving substantial grants to private parties were often "smuggled through the legislature under an innocent and deceptive title." *Long*, 258 Iowa at 1287, 142 N.W.2d at 383.

Importantly, Godfrey does not challenge the title requirement of article III, section 29. In fact, the title of House File 2581 is detailed and comprehensive and identifies each provision of the bill. Instead, Godfrey only challenges the single-subject requirement of article III, section 29 by claiming the individual provisions of House File 2581 do not relate to the same subject. Thus, Godfrey does not seek to vindicate any perpetration of fraud or deceit on the legislature or the public that can occur by infirmities in the title of a bill, but seeks to uphold the internal workings of the legislative process that promotes and encourages legislators to

understand and debate the merits of each separate subject. We believe this limited challenge by Godfrey plays a significant role in deciding whether or not to waive standing.

While standing generally limits the exercise of our powers except as to matters that are "strictly judicial in nature," *Raines v. Byrd*, 521 U.S. 811, 819, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849, 858 (1997), we become especially hesitant to act when asked to resolve disputes that require us to decide whether an act taken by one of the other branches of government was unconstitutional. *Id.* at 819–20, 117 S. Ct. at 2317–18, 138 L. Ed. 2d at 858. Without an individual injury by the complainant under such circumstances, we risk assuming "a position of authority" over the acts of another branch of government. *Lujan*, 504 U.S. at 574, 112 S. Ct. at 2143, 119 L. Ed. 2d at 373. We must avoid such a result. Thus, standing should be waived only when the issue is of utmost importance and the constitutional protections are most needed. We therefore turn to consider if the claim raised by Godfrey is of great public importance.

The absence of an allegation or claim by Godfrey that implicates fraud, surprise, personal and private gain, or other such evils inconsistent with the democratic legislative process diminishes our need to intervene to determine if the legislature has violated a constitutional mandate. The claim by Godfrey only permits her to argue that some of the provisions of House File 2581 may not have been passed as separate bills if the provisions had not been grouped together into one bill. Moreover, there is no allegation that the provisions were purposely placed into one bill to engage in logrolling. In fact, House File 2581 was a joint effort by the executive and legislative branches to reenact legislation determined by the third branch of government to have failed

in its prior enactment, and the General Assembly gathered for a special extraordinary session with the understanding of the scope of the session as outlined by the governor. These circumstances minimize our need to interfere with the affairs of another branch of government.

The absence of a claimed violation of the title requirement also diminishes the importance of the constitutional issue presented. While the subject and title requirement rules are separate constitutional principles, they operate together to prevent greater harm than when the single-subject requirement is the only violation claimed. While we strive to protect people from all constitutional violations, we do not respond to all violations the same, or even provide a remedy for every violation. *See, e.g.*, *Kain v. State*, 378 N.W.2d 900, 902–03 (Iowa 1985) (engaging in a cost-benefit analysis of excluding evidence obtained in violation of state and federal constitutions, and refusing to remedy the violation). In the broad scheme of constitutional violations, the constitutional issue presented in this case is not one of great public importance to support the waiver of our standing rule.

On the whole, we conclude Godfrey failed to present an issue of great public importance that convinces us we should waive the requirement of standing. This conclusion, of course, is not a statement on the merits of the claim, but our determination that the particular claim presented by a litigant without standing is not important enough to require judicial intervention into the internal affairs of the legislative branch of government. While the single-subject claim asserted in this case presents legitimate concerns of public importance, these concerns on balance do not trump the greater interest sought to be protected by our doctrine of standing.

**IV. Conclusion.**

We affirm the decision of the district court. Godfrey failed to establish standing to assert her claim, and we decline to waive the standing requirement under the claim presented.

**AFFIRMED.**

All justices concur except Wiggins and Hecht, JJ., who dissent, and Appel and Baker, JJ., who take no part.

**WIGGINS, Justice (dissenting).**

I dissent. Specifically, I believe we should waive our judicially created standing doctrine in this case and allow Godfrey to challenge House File 2581, 80th General Assembly, First Extraordinary Session, section 11, as violative of the single-subject clause of article III, section 29 of the Iowa Constitution.

Article III of the United States Constitution limits the judicial power of the federal courts to the resolution of cases and controversies. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. ____, ____, 127 S. Ct. 2553, 2562, 168 L. Ed. 2d 424, 437 (2007). The federal standing doctrine enforces article III's case-or-controversy requirement. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S. Ct. 1854, 1861, 164 L. Ed. 2d 589, 602 (2006). The Iowa Constitution does not contain a case-or-controversy requirement. *Hawkeye Bancorp. v. Iowa College Aid Comm'n*, 360 N.W.2d 798, 801–02 (Iowa 1985). Nevertheless, this court has adopted a standing requirement that is similar to the federal requirement. *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 869 (Iowa 2005).

The majority was correct when it found Godfrey does not have standing, under our judicially created standing requirement, to bring this action. The majority was also correct when it held we are free to waive the judicially created standing requirement if we determine the circumstances require us to do so. *See Hawkeye Bancorp.*, 360 N.W.2d at 802. I disagree, however, with the majority's analysis regarding whether the great-public-importance doctrine requires us to waive the standing requirement and allow Godfrey to maintain this action. I find

the majority's analysis, holding that the title clause of article III, section 29 of the Iowa Constitution trumps the single-subject clause, to be neither principled nor workable.

The majority's analysis is unprincipled and unworkable because the application of the great-public-importance doctrine by the majority is dependent on whether one clause of article III, section 29 has more importance than another clause. The reason our court requires a party to have standing is to avoid issuing advisory opinions. *Alons*, 698 N.W.2d at 864. The analysis of whether a person has standing to bring a lawsuit must be made independent from the merits of the claim. Otherwise, a court will issue an advisory opinion on the merits of a claim in deciding the standing issue. This is exactly what the majority did in this case. The analysis employed by the majority allowed it to decide a violation of the single-subject clause of article III, section 29 is akin to harmless error if there was not a violation of the article's title clause, and there was no fraud or deception in the enactment of the legislation. Had the majority found standing, I assume it would use the same analysis to defeat standing as it would use to defeat the claim on its merits. Thus, the majority effectively issued an advisory opinion on the merits of the claim.

A principled and workable analysis to determine whether to apply the doctrine of great public importance to waive standing first requires us to establish under what circumstances the doctrine should apply. The application of the doctrine should not be dependent on the merits of a claim.

This case appears to be the first opportunity for our court to grant a waiver of standing based upon the doctrine of great public importance. *See Exira Cmty. Sch. Dist. v. State*, 512 N.W.2d 787, 790 (Iowa 1994)

(stating it is unnecessary for the court to consider the great-public-importance doctrine because the general rules of standing apply). In an earlier case involving an item veto, we came close to adopting the great-public-importance doctrine. *State ex rel. Turner v. Iowa State Highway Comm'n,* 186 N.W.2d 141, 148 (Iowa 1971). There we stated, "The issue of interpretation of the item veto is an important matter and to dismiss this action would not serve the interests of either intervenors or defendants." *Id.* However, in that case we appeared to say the intervenors had standing because they were taxpayers. *Id.*

Finally, in a recent item-veto case brought by state legislators individually and in their capacity as state legislators, we found the legislators had standing to maintain the action. *Rants v. Vilsack*, 684 N.W.2d 193, 198 (Iowa 2004). In *Rants*, we did not distinguish between the legislators' status as state officials or taxpayers when we decided the standing issue. *Id.* In doing so, we cited the *Turner* decision. One could argue by citing the *Turner* decision, we implicitly recognized the doctrine of great public importance and waived the standing requirement for state legislators to file an action contesting an item veto.

Regardless of whether we previously recognized the doctrine of great public importance, I agree with the majority that we can and should be able to waive the standing requirement under the doctrine. I contend the proper circumstances to apply the doctrine occur in the exceptional case where a citizen claims a branch of government violated a provision of the Iowa Constitution that presents a clear threat to the essential nature of state government as guaranteed by the constitution. *See Sears v. Hull,* 961 P.2d 1013, 1019 (Ariz. 1998) (holding the court should only apply the doctrine narrowly and only under exceptional circumstances); *see also State ex rel. Coll v. Johnson,* 990 P.2d 1277,

1284 (N.M. 1999) (stating the doctrine has been applied in cases that "generally involved clear threats to the essential nature of state government guaranteed to New Mexico citizens under their [c]onstitution—a government in which the 'three distinct departments, . . . legislative, executive, and judicial,' remain within the bounds of their constitutional powers" (citation omitted)).

The single-subject clause prevents logrolling, the practice whereby the legislature joins two or more unconnected matters in one bill to coerce legislators who support one of the matters into voting for the entire bill so they can secure passage of the individual matter they favor. Logrolling is not only inducive of fraud, it also makes it difficult to ascertain whether the legislature would have passed either of the matters had they been voted on separately. *State ex rel. Clark v. State Canvassing Bd.*, 888 P.2d 458, 461 (N.M. 1995).

The federal Constitution does not contain a single-subject clause. However, the framers of the Iowa Constitution thought a single-subject clause was important enough to include in both the 1846 constitution and our present-day constitution. *See* Iowa Const. art. III, § 26 (repealed 1857); Iowa Const. art. III, § 29. The single-subject clause is an essential constitutional restriction on the power of the legislature to enact laws. To disallow a citizen legal redress to contest a law on the grounds that it violates the single-subject clause is a clear threat to the essential nature of the operation of the legislative branch of state government as guaranteed by the constitution. The joinder of two or more unconnected matters in a bill is no mere irregularity. The single-subject clause goes to the heart of the legislative process mandated by the people of the State of Iowa when they adopted our constitution. Therefore, I would apply the doctrine of great public importance, waive the requirement of standing,

and allow Godfrey's challenge to proceed. *See Sloan v. Wilkins*, 608 S.E.2d 579, 583 (S.C. 2005) (holding the doctrine of great public importance allows a citizen to challenge a bill under the single-subject clause of the South Carolina Constitution).

Consequently, I would reverse the judgment of the district court and remand the case for a trial on the merits.

Hecht, J., joins this dissent.