**IN THE COURT OF APPEALS OF IOWA**

No. 16-1552
Filed June 7, 2017

**AL BRUEGGEMAN, DAN BREUKER, TOM BREMER, ROGER BOSMA, MARK DILLEHAY, RANDY ROWE, ALLEN ROWE, and JARROD WALLACE,**
    Plaintiffs-Appellants,

**vs.**

**OSCEOLA COUNTY, IOWA and THE CITY OF HARRIS, IOWA,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Osceola County, David A. Lester, Judge.

The plaintiffs appeal from the district court's ruling granting the defendants' motion for summary judgment on the threshold issues of timeliness and standing and dismissing the plaintiffs' claims. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Aaron W. Ahrendsen and John C. Werden Jr. of Eich, Van Dyke, Werden & Steger, P.C., Carroll, for appellants.

Stephen G. Kersten of Kersten, Brownlee, Hendricks, L.L.P, Fort Dodge, for appellees.

Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The plaintiffs are named resident taxpayers of Osceola County and of the Harris-Lake Park School District. They filed a petition for writ of certiorari and declaratory judgment challenging a resolution and an effectuating ordinance passed by or involving the defendants, Osceola County and the City of Harris. In conjunction, the resolution and ordinance established an urban renewal area and an urban renewal plan and divided the tax revenue levied on that area as tax increment financing (TIF) to fund the plan. The plaintiffs challenged the actions claiming they would be harmed as taxpayers. The defendants filed a motion for summary judgment, and the district court granted it, finding the plaintiff's lacked standing to challenge the resolution and their claims involving the ordinance were untimely. The plaintiffs' petition was dismissed. On appeal, the plaintiffs challenge the district court's ruling and maintain the merits of their motion for summary judgment should have been granted instead.

**I. Background Facts and Proceedings.**

In general terms, this case is about the actions taken by Osceola County and the City of Harris to fund improvements to Harris's lagoon project, pursuant to Iowa Code chapter 403 (2015).[1] The following facts are undisputed:

---

[1] In a recent case, our supreme court provided a detailed explanation of chapter 403:

> Iowa Code chapter 403 covers urban renewal in Iowa. Under that chapter, the governing body of the municipality must first determine by resolution that an area is "a slum area, blighted area, economic development area or a combination of those areas." Iowa Code §§ 403.5(1), .17(23) (2013). This area, having been designated as appropriate for a renewal project, is known as an urban renewal area (URA). *Id.* The municipality also must prepare or cause to be prepared an urban renewal plan that lays out proposed projects for "the development, redevelopment, improvement, or rehabilitation" of the designated URA. *Id.* §§ 403.5(2)(*a*), .17(24).

In March 2015, Harris was under an administrative order from the Iowa Department of Natural Resources to update its lagoon, but the city did not have the debt capacity to take on the improvements. As a result, on March 10, the city sent a letter to the Osceola County Board of Supervisors "asking for help with possibly doing a TIF on the windmills for infrastructure within the City." Within a couple of weeks, at a meeting of the board, the Harris mayor "asked that the supervisor consider establishing an urban renewal area including the turbines and city of Harris to help fund needed projects."

In August 2015, an attorney hired by the county sent a letter to the county auditor, indicating, "It is our understanding that the initial focus of our representation will be on establishing an urban renewal area and TIF district and

---

The governing body submits the urban renewal plan to the municipality's planning commission for review and recommendation as to whether it complies with the general plan of development for the municipality. *Id.* § 403.5(2)(*a*). The governing body then holds a public hearing on the plan. *Id.* § 403.5(3). After the hearing, the governing body may approve the plan. *Id.* § 403.5(4). . . .

Chapter 403 also authorizes a unique form of financing for urban renewal projects. This is known as tax increment financing (TIF). *Id.* § 403.19. TIF works on the theory that any projects completed in the URA will increase the taxable value of the properties included within the area. Upon approval of a TIF district, the assessed value of the properties within the district is frozen for purposes of normal tax assessment by the municipality. *Id.* § 403.19(1)(*a*). Then, the tax collected for any enhanced value above this base is allocated to a separate fund designated to pay for any indebtedness incurred to complete the improvements. *Id.* Presumably, that is because the improvements bring about the increased property value. "In theory, the process is a closed circuit: the incremental revenues pay for the public expenditures, which induce the private investment, which generates the incremental revenues, which pay for the public expenditures." Richard Briffault, *The Most Popular Tool: Tax Increment Financing and the Political Economy of Local Government,* 77 U. Chi. L. Rev. 65, 68 (2010). . . .

*Concerned Citizens of Se. Polk Sch. Dist. v. City of Pleasant Hill*, 878 N.W.2d 252, 254 (Iowa 2016).

adopting an urban renewal plan (the "Plan") to facilitate the use of tax increment financing."

At the October 20 board meeting, the board conducted a public hearing on and ultimately adopted Resolution 10-15/16. It stated, in part:

> Resolution to declare necessity and establish an urban renewal area pursuant to section 403.4 of the Code of Iowa and approve urban renewal plan and project for Osceola County Urban Renewal Area 7.
>
> . . . .
>
> WHEREAS, a portion of the Property lies within the corporate boundaries of the City of Harris (the "City"), and a joint agreement (the "Joint Agreement") has been executed and delivered by the City in satisfaction of the consent requirement of section 403.17 of the Code of Iowa.
>
> . . . .
>
> WHEREAS, the proposed Plan will authorize initial projects to be undertaken in the Urban Renewal Area entailing the use of tax increment financing to support the undertaking of the economic development and blight alleviation initiatives in the City . . . .

The adoption of the resolution established the urban renewal area and the urban renewal plan.

At the same meeting, the board also introduced Ordinance No. 47 for "its initial consideration."[2] The ordinance stated, in part:

> An Ordinance Providing for the Division of Taxes Levied on Certain Taxable Property in the Osceola County Urban Renewal Area 7, Pursuant to Section 403.19 of the Code of Iowa.
>
> . . . .
>
> Section 8. Purpose. The purpose of this ordinance is to provide for the division of taxes levied on certain taxable property in Osceola County Urban Renewal Area 7, each year by and for the benefit of the state, city, county, school districts or other taxing districts after the effective date of this ordinance in order to create a special fund to pay the principle of and interest on loans, moneys

---

[2] Pursuant to Iowa Code section 331.302(6)(a), the ordinance was considered and voted on, but it could not be passed until it was "considered and voted on for passage at two meetings of the board prior to the meeting at which it [was] to be finally passed."

> advanced to or indebtedness, including bonds proposed to be issued by Osceola County to finance projects in such area.
>
> . . . .
>
> "TIF district" shall mean the following taxable real property situation in Osceola County Urban Renewal Area 7 . . . .

The ordinance, once adopted, would establish the TIF district—freezing the value of the properties in Urban Renewal Area 7 for purposes of normal tax assessments by the municipality and then allocating the tax collected for the enhanced value above that base to the separate TIF fund to finance the improvements named in the urban renewal plan.

On October 27, at another meeting of the board of supervisors, Ordinance No. 47 was "given its second consideration."

On November 3, the plaintiffs filed their petition for writ of certiorari and declaratory judgment. In it, the plaintiffs claimed the defendants had "adopted a Resolution that created an urban renewal area that includes the City of Harris and wind energy conversion property, as defined in Iowa Code [section] 427B.26, located outside the City of Harris" and the "Resolution is unlawful because it violates Iowa Code Chapter 403 and the Iowa Constitution."

On November 10, the board of supervisors approved the final consideration of Ordinance No. 47 and adopted it.

At the November 30 special session meeting of the board, the board entered "into a written agreement with Osceola County confirming prior verbal agreement and understanding." The agreement in question is the "urban renewal joint agreement" that was referenced in Resolution 10-15/16 as the "joint agreement [that] has been executed and delivered by the City in satisfaction of the consent requirement." The written Urban Renewal Joint Agreement states

the city and county has entered into the agreement verbally in August 2015 and, at the request of the city, the county had "approved this written contract to memorialize the Joint Agreement." Additionally, the written agreement was "intended to memorialize the prior verbal agreement between the parties and to meet the statutory requirements of paragraph 4 of section 403.17 of the Code of Iowa and shall be effective upon execution as of the date first listed above." The agreement was backdated to October 20, 2015—the date Resolution 10-15/16 was passed by the board.

In February 2016, the plaintiffs filed a motion for summary judgment. They maintained Osceola County had acted illegally when the board established Urban Renewal Area 7, part of which lies within the City of Harris, without first entering into the written Urban Renewal Joint Agreement with Harris. Additionally, the plaintiffs asserted that Urban Renewal Area 7 was not an "area" because it is not connected and the inclusion of wind energy conversion property violated the spirit of chapter 403. The defendants resisted the motion, and after a hearing on it, the district court overruled it, finding there was a material factual dispute about the timeliness of plaintiffs' challenge to the ordinance—namely, whether Ordinance No. 47 was adopted on October 20 or November 10.

Shortly thereafter, the plaintiffs filed a motion for leave to amend their petition. The plaintiffs asked "the Court for leave to amend their petition to include challenging the October 27, 2015 consideration of Ordinance No. 47 and the November 10, 2015 consideration of Ordinance 47" and "to have the amended Petition for Writ of Certiorari considered filed after the November 10, 2015 reading and adoption [of Ordinance 47]."

The defendants resisted the plaintiffs' motion to amend their petition, and they filed their own motion for summary judgment. In the defendants' motion for summary judgment, they asserted that insofar as the plaintiffs challenged Ordinance No. 47, their petition was untimely. Additionally, the defendants claimed the plaintiffs did not have standing to challenge Resolution 10-15/16 because the plaintiffs were not parties to the agreement and had not claimed they were "injured in a special manner, different from that of the public generally" by the creation of the Urban Renewal Area 7 and the urban renewal plan. The city and county also maintained the plaintiffs' claims could be dismissed by summary judgment on the merits because the defendants had satisfied the statutory requirements regarding the joint agreement and the "area" in Urban Renewal Area 7 was "consistent with the purposes of the urban renewal statute [section] 403 and is neither arbitrary or capricious."

On September 2, the district court granted in part the plaintiffs' motion to amend their petition. The court allowed the plaintiffs to amend their petition "to include claims challenging Defendant[s'] consideration of Ordinance No. 47 on October 27, 2015 and November 10, 2015, with that amended petition being deemed filed and served in the form attached to Plaintiff[s'] motion." However, the court denied the plaintiffs' request that it "enter an order deeming that amended petition as having been filed on November 10, 2015." Rather, the court ruled the plaintiffs' amended petition "shall be deemed as relating back to the filing date of their original petition, which was November 3, 2015." The plaintiffs' amended petition included the claim that "Defendants . . . purportedly adopted an Ordinance. Meetings in an attempt to adopt the Ordinance were held on October

20, 2015; October 27, 2015; and November 10, 2015": and the "Resolution and Ordinance [are] unlawful."

On September 16, the district court ruled on the defendants' motion for summary judgment. The court concluded the plaintiffs' petition—which was filed on November 3, 2015—was timely to challenge the passing of Resolution 10-15/16 (which occurred on October 20) but was filed early and untimely as to the final approval and adoption of the Ordinance No. 47 (which took place on November 10). The court determined the untimely filing deprived it of jurisdiction to decide the plaintiffs' claims about the ordinance, leaving only the plaintiffs' claims regarding the legality of the board's actions in passing the resolution.

In deciding whether the plaintiffs lacked standing to challenge the resolution, the district court distinguished between the result of the adoption of Resolution 10-15/16 and Ordinance No. 47. The court found the resolution had merely created Urban Renewal Area 7, which the plaintiffs had not shown had harmed them in any way, while "the passage of the Ordinance . . . provided for the TIF district which, in turn, could possibly affect property taxation by freezing the tax receipts going to basic services so that more money can go to pay for rehabilitation in Area 7." The court concluded the plaintiffs could not show Resolution 10-15/16 had harmed them in some special manner, so they lacked standing to challenge it. The court did not reach the merits of plaintiffs' claims and dismissed the plaintiffs' petition; they appeal.

**II. Standard of Review.**

"We review a grant of a motion for summary judgment for correction of errors at law." *Concerned Citizens*, 878 N.W.2d at 258. "Issues of statutory

construction are legal questions and 'are properly resolvable by summary judgment.'" *Id.* "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied." *Rants v. Vilsack*, 684 N.W.2d 193, 199 (Iowa 2004).

## III. Discussion.

### A. Timeliness and Jurisdiction.

The plaintiffs maintain the district court erred in finding its petition was untimely as to the ordinance; they assert the board acted illegally on each of the three occasions it considered Ordinance No. 47 (October 20 and 27, and November 10) and claim "each individual action that the county took is challengeable by certiorari." We disagree.

Pursuant to Iowa Rule of Civil Procedure 1.1402(3), petitions for writ of certiorari "must be filed within 30 days from the time the tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Our case law provides that "the time at which a tribunal acted illegally occurs *when the underlying proceeding becomes final*." *Sergeant Bluff-Luton Sch. Dist. v. City Council of Sioux City*, 605 N.W.2d 294, 297 (Iowa 2000) (emphasis added) (citing Iowa Rule of Civil Procedure 307(c), now renumbered as rule 1.1402(3)). The adoption of Ordinance No. 47 was not final until November 10. *See* Iowa Code § 331.302(6)(b) ("A proposed ordinance . . . shall be considered and voted on for passage at two meetings of the board prior to the meeting at which it is finally passed."). The plaintiffs attempt to muddy the waters by claiming it is unclear what constitutes a "final action" in adopting an ordinance, but section

331.302(6)(b) explicitly states that it is a meeting after an ordinance is twice considered and voted on "at which it is *finally* passed." (Emphasis added.)

Because the final action in the adoption of the ordinance took place on November 10, the plaintiff's November 3 petition challenging the ordinance[3] was untimely. *See* Iowa R. Civ. P. 1.1402(3). "An untimely petition for writ of certiorari deprives the court of subject matter jurisdiction." *Sergeant Bluff*, 605 N.W.2d at 297. Thus, the district court did not err in dismissing the plaintiff's claims insofar as they challenged Ordinance No. 47. *See Lloyd v. State*, 251 N.W.2d 551, 558 (Iowa 1977) ("If the court has no subject matter jurisdiction it has no power to enter a judgment on the merits and must dismiss the action.").

**B. Standing.**

Here, the district court found that the plaintiffs had not been injuriously affected by the creation of Urban Renewal Area 7 and the corresponding urban renewal plan, and thus they lacked standing to challenge the board's decision to adopt the resolution.

In order to have standing to sue, "a party must have 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 863 (Iowa 2005) (citations omitted). "As far as Iowa law is concerned, this means 'that a complaining party must (1) have a specific or personal legal interest in the litigation and (2) be injuriously affected.'" *Id.* at 864 (citation omitted). "Only a likelihood or possibility of injury need be shown. A party need not demonstrate injury will accrue with certainty, or

---

[3] As noted above, the plaintiffs' original petition did not challenge the ordinance, but the district court allowed the plaintiffs to amend their petition and ruled the amended petition would be considered as filed on the same date as the original.

already has accrued." *Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 445 (Iowa 1983).

> Certiorari, which is an extraordinary remedy, is available to all persons who show a substantial interest in the activity challenged. Generally, only a party to an action may obtain the writ. An exception exists, however, when the public is concerned with the subject matter of the action, in which case anyone interested may petition. In order for persons who are not parties to assert a claim, they must prove that they have been injured in a special manner, different from that of the public generally.

*State v. West*, 320 N.W.2d 570, 573 (Iowa 1982) (citations omitted).

In other words, because the plaintiffs were not parties to the resolution, they must satisfy the public interest exception in order to have standing. *See Alons*, 698 N.W.2d at 864. "It is clear that mere citizenship confers no right to maintain the action." *Polk Cty v. Dist. Ct.*, 110 N.W. 1054, 1054 (Iowa 1907). "A general interest shared by all citizens in making sure government acts legally is normally insufficient to support standing . . . ." *Godfrey v. State*, 752 N.W.2d 413, 423–24 (Iowa 2008). However, a taxpayer can acquire "standing by showing some link between higher taxes and the government action being challenged." *Id.* at 424.

The defendants maintain the plaintiffs have failed to allege any damages or injuries. We disagree. In their petition, the plaintiffs contend they are "residents and taxpayers of Osceola County" and "[t]hey reside and pay taxes in Osceola County." This assertion is supported by the individual plaintiffs' response to interrogatories. And as our supreme court has recognized, "By its nature, TIF diverts property tax revenue that would otherwise be available to the regular taxing districts." *Concerned Citizens*, 878 N.W.2d at 254. "[A] taxpayer

may maintain an action in his own name to prevent unlawful acts by public officers which would 'increase the amount of taxes he is required to pay, or diminish a fund to which he has contributed.'" *Polk Cty*, 110 N.W. at 1055. In their resistance to the defendants' motion for summary judgment, the plaintiffs echoed these sentiments, claiming:

> The money captured in tax increment comes from wind energy conversion property in Osceola County. Diverting this money into the tax increment removes the money from the county's tax rolls and limits the general funds available for county projects and expenses. All Plaintiffs, as taxpayers, contribute to the county's tax revenue. . . . The litigants are facing higher taxes as the result of illegal action by Defendant. A successful challenge to the governmental action at issue in this case will result in theoretically lower taxes.

Additionally, the district court's ruling granting the defendants' motion for summary judgment based its decision on the plaintiffs being taxpayers, noting that to have standing, the plaintiffs had to "show their property taxes will be increased." While the defendants question whether the plaintiffs have alleged an injury, we believe the issue turns on whether that injury is "purely hypothetical"—as the district court found—or "sufficiently likely," so to confer standing.

According to case law, plaintiffs who want to challenge the inclusion of certain land in an urban renewal plan and TIF district must file their challenge within thirty days of the board's decision to include that land in the project rather than waiting until the resulting taxes are levied. *See Sergeant Bluff*, 605 N.W.2d at 295 ("Had the city not designated [the land] as urban renewal property, the school district could not have been affected by the TIF tax plan levied therefrom. . . . Stated another way, the legality of the tax levy is dependent upon the legality of the classification of the property from which the levy flows."). Here,

the plaintiffs did so; they filed their petition for writ of certiorari within thirty days of the land being placed in the urban renewal area and the adoption of the urban renewal plan.[4]

We do not believe establishing an urban renewal area is always sufficient to confer standing on individuals. However, under these undisputed facts, the adoption of the resolution creating the urban renewal area was part of an overall plan to create a TIF district, which was imminent, or at least likely, at the time the plaintiffs' filed their petition. *Cf. Iowa Bankers*, 335 N.W.2d at 445 ("A party need not demonstrate injury will accrue with certainty, or already has accrued."); *see Godfrey v. State*, 752 N.W.2d 413, 421–22 (Iowa 2008) ("[T]he plaintiff must establish 'a causal connection between the injury and the conduct complained of' and that the injury is 'likely, as opposed to merely speculative' 'to be redressed by a favorable decision.'" (citations omitted)). In other words, we believe there is a link between the passing of Resolution 10-15/16 and the intended (and partially completed) goal of passing Ordinance No. 47, and we believe the passing of Ordinance No. 47 was "likely, as opposed to merely speculative."[5] *Godfrey*, 752 N.W.2d at 421–22.

---

[4] If *Sergeant Bluffs* stands for the proposition that the plaintiffs must challenge the legality of the urban renewal area and plan, but the district court is right that the "specific injury" which gives the parties standing comes from the adoption of the TIF district, future plaintiffs could be prevented from ever being able to challenge a board's decision; county boards could simply choose to pass resolutions creating the urban renewal area and plan and then wait more than thirty days to pass the ordinance adopting the TIF district.

[5] The district court disagreed, finding "[a] challeng[e] only to the legality of the Resolution and corresponding creation of Area 7 is a purely hypothetical risk contingent on the passage of the Ordinance establishing the TIF district." In doing so, the district court seems to ignore all the facts, as they existed at the time the plaintiff's filed their petition, surrounding the ordinance. We agree that the plaintiffs' motion was untimely as to the consideration of whether the ordinance was legal, but we do not believe that requires us

The county had to pass the resolution creating the urban renewal area in order to pass Ordinance No. 47 creating the TIF district. *See* Iowa Code § 403.19 ("A municipality may provide by ordinance that taxes levied on taxable property *in an urban renewal area* each year by or for the benefit of the state, city, county, school district, or other taxing district, shall be divided as follows . . . ." (emphasis added)). Additionally, we know that the resolution was passed in anticipation of establishing the TIF district. The city's first letter on the subject, in March of 2015, asked the county to create a TIF district; the attorney hired by the county had written a letter in August 2015 expressing his understanding that he was being hired to create a TIF district; and the ordinance that would actually create the TIF district and cause the specific harm was two-thirds of the way to being adopted when the plaintiffs filed their petition.

Because the defendants had to first pass Resolution 10-15/16 in order to create the TIF district, and it was likely Ordinance No. 47 would pass and the resulting specific harm would occur, the plaintiffs have standing to bring their challenge to the resolution.

**IV. Conclusion.**

We agree with the district court that the plaintiffs' petition for writ of certiorari and declaratory judgment was untimely to challenge Ordinance No. 47, and we affirm the district court's grant of defendants' motion for summary judgment on that ground and dismissal of the corresponding claim. However, because we find the plaintiffs have standing to bring their challenge to Resolution

---

to ignore facts surrounding the county board's actions as they pertain to whether the ordinance was likely to be passed.

10-15/16, we reverse and remand for further proceedings. On remand, the plaintiffs may refile their motion for summary judgment or the claims regarding Resolution 10-15/16 may be set for trial.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**