Thelma MIKULAY, Appellant,

v.

The HOME INDEMNITY COMPANY, Respondent.

No. C5-88-2599.

Court of Appeals of Minnesota.

Dec. 19, 1989.

Review Denied Feb. 21, 1990.

---

4. These rules appear in Volume 9 of Minnesota Statutes (1986), pp. 402–407.

Thomas R. Sheran, Tim A. Staum, O'Connor & Hannan, Minneapolis, for appellant.

Theodore J. Smetak, Katherine L. MacKinnon, Arthur, Chapman & McDonough, Minneapolis, for respondent.

Heard, considered and decided by GARDEBRING, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Thelma Mikulay appeals from the trial court's judgment and order denying her motion for amended findings or a new trial wherein the court concluded that she was not an insured under a commercial automobile policy and, therefore, not entitled to underinsured motorist coverage. We affirm.

## FACTS

Appellant Thelma Mikulay was seriously injured while riding as a passenger in an underinsured, non-scheduled motor vehicle on October 17, 1985.[1] At the time of the accident, and for some years prior, Mikulay's husband, Arnold, and his brother/business partner, Leonard, were insured by respondent The Home Indemnity Company (The Home) through policies procured through Alexander & Alexander, Inc. (A & A). Because the Mikulay brothers own numerous parking lots and commercial buildings in Minneapolis, their insurance policies were issued in the form of commercial auto-garage policies.

For many years, A & A employee Ron Rothstein handled the Mikulay account, either directly or on a supervisory basis. Beginning in 1982, Sharon Cirspinski assumed responsibility for the day-to-day servicing of the account. Annual insurance renewal conferences were held with the

---

1. A non-scheduled vehicle is one not listed in the insurance policy and not owned by the policyholder.

Mikulays to review their insurance needs and to recommend changes or additions in coverage where necessary.

For several years before the accident, the Mikulays' policies had contained a standard form endorsement for underinsured motorist (UIM) coverage. However, because the policies were issued to a business entity, the standard endorsement would not automatically extend UIM coverage to Thelma Mikulay while occupying a non-scheduled vehicle.

In 1981, Rothstein sent a memo to The Home requesting that Thelma Mikulay be added to the Driver Other Car (DOC) endorsement to the policy. The memo, however, did not specifically identify that UIM coverage was being sought. As a result, the endorsement that became effective read as follows:

This endorsement changes only those coverages listed below for which a charge is shown below. Each of those coverages is changed as follows:

| Name of Individual | Liability *Limit Premium | | Med. Pay *Limit Premium | | Uninsured Motorists *Limit Premium | | Phys. Dam. Coll. Comp. $50 Ded. |
|---|---|---|---|---|---|---|---|
| Arnold Mikulay | 500 | 63.00 | -- | | -- | | -- |
| Thelma Mikulay | | Incl. | | | | | |
| Leonard Mikulay | | 63.00 | -- | | -- | | -- |
| Katherine Mikulay | | | | | | | |
| | | 126.00 | Incl. | | | | |

\* Limit (in thousands)

After the accident, Thelma Mikulay's application to The Home for arbitration of the UIM issues was denied on the basis that she was not an insured under the policy. Consequently, she commenced a declaratory judgment action requesting the trial court to find her an insured under The Home policy and the UIM endorsement or, in the alternative, reform the policy to extend such coverage to her with limits of $500,000 per accident.

The trial court concluded the DOC endorsement was not ambiguous and did not provide Thelma Mikulay with UIM coverage. It further determined that A & A was not acting as The Home's agent when it procured insurance for the Mikulays and that the policy was not subject to the equitable remedy of reformation.

## ISSUES

1. Did the trial court err in determining that The Home's policy was not ambiguous and did not provide Thelma Mikulay with underinsured motorist coverage?

2. Did the trial court err in determining that A & A was not an agent of The Home, thus prohibiting reformation of the policy?

## ANALYSIS

1. Thelma Mikulay contends she is entitled to receive UIM coverage under The Home policy either because the policy itself, through the DOC endorsement, provides coverage or, in the alternative, because there was a mutual intent among the parties that coverage be provided. She argues the trial court ignored her reasonable interpretation that the double dashes on the endorsement indicate coverage was intended and erred in concluding the dashes unambiguously denote exclusion of UIM coverage.

██ The question of whether an insurance policy is ambiguous is a question of law and, therefore, the trial court's conclusion is not binding on this court. *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 34 (Minn.1979). A policy is ambiguous only where its language is reasonably subject to more than one interpretation. *Id.*

█ The general rule in Minnesota is that an individual occupying a non-scheduled vehicle is not an insured for coverage under a commercial automobile policy is-

sued to a business entity. *See Kuennen v. Citizens Security Mutual Insurance Co.,* 330 N.W.2d 886 (Minn.1983); *Lundgren v. Vigilant Insurance Co.,* 391 N.W.2d 542 (Minn.Ct.App.1986). Coverage may be provided, however, when an additional premium is charged under a DOC endorsement.

■ Mikulay's argument that the double dashes indicate the inclusion of a premium charge is neither reasonable nor convincing. The Mikulays' policy endorsement itself provides that it changes only coverages for which a charge is shown. A closer examination reveals that no liability limit was specified for UIM coverage and, accordingly, no charge was assessed.

■ We agree with the trial court that the only reasonable interpretation leads to the conclusion that no premium was charged for UIM coverage. A policy cannot be construed to provide such coverage unless a premium is charged. *Farmers Home Mutual Insurance Co. v. Lill,* 332 N.W.2d 635, 637 (Minn.1983); *Warren v. American Family Mutual Insurance Co.,* 418 N.W.2d 526, 529 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Apr. 15, 1988). Liability coverage did extend to Mikulay under the endorsement; however, "[a] specific intent to cover individuals for certain specified risks does not indicate a broader intent to extend individual coverage for other unnamed risks." *Lundgren,* 391 N.W.2d at 545.

Furthermore, we do not believe the trial court erred in failing to apply the reasonable expectations doctrine. *See Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271 (Minn. 1985). Thelma Mikulay could not have had a reasonable expectation of personal UIM coverage under the Mikulays' commercial insurance policy, and no existing facts or circumstances justify application of this doctrine. *See Hubred v. Control Data Corp.,* 442 N.W.2d 308, 311 (Minn.1989).

2. Thelma Mikulay claims the trial court erred in determining A & A was not acting as The Home's agent, thus precluding reformation of the policy. She argues that reformation is warranted because both the Mikulays and A & A's representatives mutually intended for The Home to provide UIM coverage to her.

■ An agency relationship exists where the purported principal manifests that the agent shall act for him and subject to his control, and where the purported agent consents to act for the principal. *Jurek v. Thompson,* 308 Minn. 191, 198–99, 241 N.W.2d 788, 791 (1976). Proof rests not with the acts or declarations of the alleged agent, but rather with the will of the principal. *Id.*

In the present case, A & A's representatives were specifically identified as independent contractors in an agreement signed by both The Home and A & A. The agreement also defined A & A's authority and expressly limited it to receiving and accepting proposals for insurance, subject to restrictions on binding authority established by The Home.

■ The trial court was correct in its conclusion that A & A acted as an independent contractor on behalf of the Mikulays and not as an agent for The Home. Therefore, since the Mikulays had no contact with the insurer, and A & A did not have authority to bind the insurer, reformation is not warranted. *See Nichols v. Shelard National Bank,* 294 N.W.2d 730, 734 (Minn.1980) (reformation of a written instrument may be granted only where there is a valid agreement between the parties expressing their real intentions).

## DECISION

The trial court did not err in its determination that The Home was not liable for UIM coverage.

Affirmed.