# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2541

_____

New Millennium Consulting, Inc., a Minnesota corporation;
Pacific Management Systems, Inc., a California corporation, for themselves and on
behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

United HealthCare Services, Inc., a Minnesota corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 17, 2012
Filed: September 21, 2012

_____

Before LOKEN and BEAM, Circuit Judges, and PERRY,[1] District Judge.

_____

PERRY, District Judge.

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court
for the Eastern District of Missouri, sitting by designation.

New Millennium Consulting, Inc. and Pacific Management Systems, Inc. supply contingent labor in the information technology field. United HealthCare Services, Inc. (UHS) hired Consolidated Hiring Information Management Efficiency System (Chimes), a centralized vendor management company, to assist it with the procurement and management of contingent workers. Chimes entered into supplier contracts with New Millennium and Pacific Management, among others, to provide contingent labor to UHS. Chimes went bankrupt in early 2008 after failing to pay its suppliers. New Millennium and Pacific Management brought this putative class action against UHS, alleging that UHS was liable to them and the other suppliers for the unpaid bills as the principal of Chimes. The district court[2] denied class certification and granted summary judgment to UHS. New Millennium and Pacific Management appeal these decisions. Because Chimes is not an agent of UHS, we affirm.

I.

Chimes developed and managed a network of over 1,800 suppliers, which it used to provide contingent labor to a number of customers, including UHS. Chimes entered into standardized agreements for Centralized Vendor Management (CVM) with UHS and its other customers. The CVM between UHS and Chimes is dated January 1, 2007 and contains a disclaimer of agency provision:

> The parties intend to create an independent contractor relationship and nothing contained in this Agreement shall be construed to make either Customer or Chimes partners, joint venturers, principals, agents, or employees of the other; provided, however, that the foregoing shall not be construed as preventing Chimes from performing any of its obligations under this Agreement.

---

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

The CVM also provides that "neither party shall have any right, power, or authority, express or implied, to bind the other." The payment provision states as follows:

> Chimes will be solely responsible for all compensation or other payments due to any Consultant or Subcontract Supplier recruited by Chimes to provide consulting services to customer . . . provided however, Chimes shall not be obligated to make any payment to any Vendor unless and until Customer shall have made prior payment to Chimes.

The CVM contemplated that Chimes would enter into a Subcontractor Supplier Agreement (SSA) with each supplier of contingent labor. The customer, such as UHS, was not a party to the SSA. Chimes entered into SSAs with approximately 250 suppliers, including New Millennium and Pacific Management, to provide contingent labor to UHS. Several forms of SSAs are attached to the CVM. The SSAs state that "the parties understand and acknowledge that UHS is not a party to this Agreement, however, UHS is an intended third party beneficiary under this Agreement." The SSAs obligated Chimes to pay the suppliers "on a monthly schedule following receipt by Chimes from Subcontract Supplier of its Consultants' billing information . . . and following full funds availability by Chimes of payment from UHS."

Also attached to the CVM is a form titled "Participating Vendor Agreement" (PVA), which was to be used with "vendors who do not execute a Subcontract Supplier Agreement with Chimes." The CVM states that, in those cases, "Chimes will not establish a contractual relationship with these vendors except . . . Chimes will, upon Customer's request, perform as billing and paying agent for consulting services provided by each participating vendor designated by customer." Neither New Millennium nor Pacific Management signed a PVA.[3]

---

[3]None of the other putative class members signed a PVA, either.

-3-

UHS made its regular monthly payment to Chimes for the November 2007 billing period, but Chimes declared bankruptcy before it paid its suppliers for November. Chimes' secured creditors seized Chimes' assets, including the funds paid by UHS for the November 2007 billing period. As a result of Chimes' failure to pay its suppliers, New Millennium was owed $34,258.60 for work performed at UHS and Pacific was owed $26,352. In addition to New Millennium and Pacific Management, there were over 200 other suppliers that never received their November 2007 payments from Chimes for work performed for UHS.

New Millennium and Pacific Management originally brought this putative class action against UHS in Minnesota state court. UHS removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The putative class alleged in the amended complaint consists of Chimes' subcontractors who provided services to UHS during the November 2007 billing period and were not paid. The district court denied the motion for class certification following a hearing, finding that New Millennium and Pacific Management had failed to demonstrate predominance as required by Fed. R. Civ. P. 23(b)(3). The district court also denied their motion for reconsideration on the same ground. Following the denial of class certification, the parties stipulated to the dismissal of all counts of the amended complaint except for the breach of contract-agency claim. UHS then moved for summary judgment on that claim.

Applying Minnesota law,[4] the district court granted UHS's motion for summary judgment. The district court found that Chimes was not the agent of UHS because both parties expressly disclaimed any agency relationship under the terms of the CVM. The district court also examined the relationship between UHS and Chimes and determined that UHS did not exercise control over Chimes sufficient to create the existence of an agency relationship. Finally, the district court held that even if

---

[4]The parties agree that Minnesota law applies.

Chimes were UHS's agent, the breach of contract claim would still fail because § 149 of the Restatement (Second) of Agency (1958) excludes a principal's liability for an agent's contract if "the principal is excluded as a party by the terms of the instrument or by the agreement of the parties."

## II.

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir. 2011) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co., 465 F.3d 900, 903 (8th Cir. 2006)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

"An agent can bind a principal through actual authority, either express or implied, and through apparent authority." Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal, 516 F.3d 719, 727 (8th Cir. 2008) (applying Minnesota law). "Actual authority is that authority given by the principal to the agent to act on its behalf, and it requires that the principal manifest its consent to the agent's ability to bind the principal." Id. (citing Restatement (Third) of Agency § 3.01 (2006)). "Actual authority must be traced to the principal's dealings with the agent; it cannot be inferred from the agent's dealings with third parties." Bjorkedal, 516 F.3d at 727 (quoting Tullis v. Federated Mut. Ins. Co., 570 N.W.2d 309, 313 (Minn. 1997)). "Implied authority is actual authority, circumstantially proved, and . . . includes only such powers directly connected with

-5-

and essential to carrying out the duties expressly delegated to the agent." Tullis, 570 N.W.2d at 313 (citations omitted).

Although "the existence of an agency relationship is generally a question of fact, summary judgment may be appropriate if the evidence is conclusive." Children's Broadcasting Corp. v. Walt Disney Co., 245 F.3d 1008, 1021 (8th Cir. 2001) (applying Minnesota law). "Before a court will impose a legal obligation on a person to act like an agent, the plaintiff must first introduce factual evidence that he sought this arrangement and that the alleged agent consented to it." Id. (quoting PMH Props. v. Nichols, 263 N.W.2d 799, 803 (Minn. 1978)). "No one can become the agent of another without the consent, either express or implied, of the principal." Children's Broadcasting, 245 F.3d at 1021-22 (quoting Nerlund v. Schiavone, 84 N.W.2d 61, 65 (1957)). In Children's Broadcasting, this Court affirmed the district court's determination that ABC Radio was not the agent of Children's Broadcasting as a matter of law because the parties expressly disclaimed a principal-agent relationship in their contract. 245 F.3d at 1022. "This disclaimer binds Children's and precludes its claim for breach of fiduciary duties." Id.

New Millennium and Pacific Management contend that Chimes had actual authority to act as UHS's agent under the terms of the CVM, which they insist includes the PVA and the SSAs because forms of those contracts are attached as exhibits to the CVM. Under Minnesota law, "instruments executed at the same time, by the same parties, relating to the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." Farrell v. Johnson, 442 N.W.2d 805, 806 (Minn. Ct. App. 1989) (citations omitted). However, "[w]hether separate documents executed simultaneously should be treated as a single contract is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances." Id. (citation omitted). Here the attachments are not even signed by the same parties as the CVM, and there is no evidence that the CVM was executed by UHS and Chimes at the same

time that Chimes entered into SSAs with its suppliers. The district court properly rejected this argument.[5]

The agency disclaimer in the CVM – "nothing contained in this agreement shall be construed to make either UHS or Chimes partners, joint venturers, principals, agents, or employees of the other . . . " – is similar to the language of the disclaimer in <u>Children's Broadcasting</u>, which we found precluded an agency relationship as a matter of law. <u>See</u> 245 F.3d at 1022. New Millennium and Pacific Management, however, contend it has no effect on a claim brought by a third party, relying on <u>Board of Trade v. Hammond Elevator Co.</u>, 198 U.S. 424 (1905). That case, however, is not analogous to this one, and, most importantly, was not based on Minnesota law. In <u>Hammond</u> the Court held that service of process on a Delaware corporation was proper on an agent in Illinois even though the agent and principal had an agreement disclaiming agency and had "taken great pains" to "artfully disguise" their real relationship. <u>Id.</u> at 439-440. The Court looked at the relationship of the principal and agent and the relationship of the agent to the customers to reach its decision, and considered such things as the fact that Hammond leased telegraph wires in its own name and designated the agent's office as its own office in the leases. The agents were "compensated as if they were agents," the customers knew they were buying from Hammond and would be liable to Hammond if they owed money, and "the real trading is done between the customer and the elevator company." <u>Id.</u> at 441.

But Minnesota law focuses on the will of the principal in determining agency, and Minnesota courts consider disclaimers even in cases involving third parties. In <u>Mikulay v. Home Indemn. Co.</u>, 449 N.W.2d 464, 467 (Minn. Ct. App. 1989), the

---

[5]New Millennium and Pacific Management argued to the district court that these documents constituted an "integrated CVM." They say that they abandoned that theory, but their arguments remain essentially the same: they continue to argue that the blank form PVA changed the terms of the CVM. Abandoning the term "integrated" does not rescue the argument.

Minnesota Court of Appeals specifically relied on an agency disclaimer in an action brought by a third party because the disclaimer showed that there was no consent by the purported principal to establish an agency. See also Sipe v. Fleetwood Motor Homes, 574 F. Supp. 2d 1019 (D. Minn. 2008); Cardiac Pacemakers, Inc. v. Aspen Holding Co., 413 F. Supp. 2d 1016, 1025 (D. Minn. 2006). As in those cases, the disclaimer here demonstrates UHS's and Chimes' refusal to consent to an agency relationship. Without that consent, Chimes cannot be considered the agent of UHS as a matter of law. See Jurek v. Thompson, 241 N.W.2d 788, 791(Minn. 1976) (agency requires consent of principal and agent). Additionally, New Millennium and Pacific Management have expressly stated that they are not raising any claim of apparent authority – such a claim would fail, of course, because they acknowledged in their own contracts that UHS was not a party to their agreements with Chimes.[6] Unlike the Hammond case, UHS and Chimes never disguised anything about their relationship, and the suppliers, including New Millennium and Pacific Management, knew exactly who they were contracting with.

New Millennium and Pacific Management point to the "provided however" clause of the agency disclaimer as evidence that UHS and Chimes agreed that Chimes was UHS's agent. The clause states: "provided, however, that the foregoing [agency disclaimer] shall not be construed as preventing Chimes from performing any of its obligations under this Agreement." The district court concluded that the reasonable

---

[6] The district court also held that, even if Chimes were the agent of UHS, the breach of contract-agency claim would still fail as a matter of law. The court pointed out that § 149 of the Restatement (Second) of Agency provides that a principal "is subject to liability upon an authorized contract in writing . . . although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument of by the agreement of the parties." The SSAs signed by New Millennium and Pacific Management specifically excluded UHS as a party. The district court did not err in its application of § 149 to these facts, but because we find no agency, it is not necessary for us to determine whether the Minnesota courts have adopted this provision of the Restatement.

-8-

meaning of this clause is that "Chimes is not excused from its duties under the parties' agreement because it is not an agent." We find no error in this interpretation of the agreement, which properly gives effect to all terms of the agreement and is consistent with the standard rules of contract construction. See Brookfield Trade Center, Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998) (contract language is to be given "plain and ordinary meaning," construed in context, and interpreted in "such a way as to give meaning to all of its provisions.") (internal citations omitted).

New Millennium and Pacific Management urge us to ignore the disclaimer and look instead at the alleged control UHS exercised over Chimes. As evidence of control, they point to various provisions in the CVM which permit UHS, for example, to screen workers, assign them, and supervise their work. But Chimes ran its own business and financial affairs, had numerous customers other than UHS, and Chimes was the party who engaged, evaluated, assigned, and removed the suppliers in its network. New Millennium and Pacific Management's reliance on A. Gay Jenson Farms Co. v. Cargill, Inc., 309 N.W.2d 285 (Minn. 1981), is misplaced. In Cargill, the Supreme Court of Minnesota found that Warren Grain & Seed had actual authority to act as the agent for Cargill in its dealings with grain farmers because Cargill, Warren's sole creditor, exerted de facto control over the grain elevator. Id. at 290-91. Cargill directed Warren's internal and financial affairs on a day-to-day basis. Id. In support of its decision, the Minnesota Supreme Court relied upon the Restatement (Second) of Agency § 14 O (1958), which provides that "a creditor who assumes control of his debtor's business may become liable as principal for the acts of the debtor in connection with the business." Id. at 291. Here, UHS was not Chimes' creditor and exerted no control over Chimes' internal affairs.

In light of the express disclaimer of agency and the lack of any evidence that UHS consented to Chimes acting as its agent, Chimes was not UHS's agent under

prevailing Minnesota law. Chimes' suppliers have no basis for suing UHS for the amounts Chimes owed them when it went bankrupt.

## IV.

For these reasons, we affirm summary judgment in favor of UHS and do not reach the issue of whether the district court properly denied class certification.

_____