# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1925
_____

McGowen, Hurst, Clark & Smith, P.C.

*Plaintiff - Appellee*

v.

Commerce Bank

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: May 13, 2021
Filed: August 27, 2021
_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.
_____

SMITH, Chief Judge.

Robert McGowen obtained a personal loan from Commerce Bank ("Commerce"). At all relevant times, McGowen served as the president, was on the board of directors, and was a shareholder of McGowen, Hurst, Clark & Smith, P.C. (MHCS), an accounting firm. Commerce attempted to secure McGowen's personal loan by his signature on a pledge ("Pledge") that purportedly made his shares of stock

in MHCS collateral. Commerce also required that McGowen obtain MHCS's signature on a document acknowledging the Pledge ("Acknowledgment"). Upon McGowen's default, the parties disputed the enforceability of the Pledge and the Acknowledgment against MHCS. Both parties moved for summary judgment. The district court[1] entered summary judgment in MHCS's favor. Commerce appeals. We affirm.

## I. *Background*

MHCS is an accounting firm that is organized as a professional corporation in Iowa. It is run by a board of directors that is comprised of the company's shareholders. All of the directors own an equal interest in MHCS. From 1975 to 2018, McGowen was a shareholder in MHCS. And between 1993 and 2016, McGowen served as MHCS's president and managing shareholder.

Under MHCS's bylaws, "all . . . written contracts and agreements to which [MHCS] [is] a party [must] be executed in [MHCS's] name by the president or the vice president and attested by the secretary or an assistant secretary," but entrance into such written instruments is "[s]ubject always to the specific directions of the board of directors." J.A. at 222. The bylaws further provide that MHCS can only enter a loan or issue any "evidence[] of indebtedness" if "authorized by a resolution of the board of directors." *Id.*

During McGowen's tenure with MHCS, he began having financial difficulties. In 2011, he sought to obtain a personal loan from Commerce. Commerce agreed to loan McGowen over $1.2 million. As part of the loan, McGowen signed the Pledge, which purported to give Commerce a security interest in McGowen's MHCS stock as collateral for the loan.

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Before completing the loan, Commerce also required that McGowen obtain MHCS's signature on another document, the Acknowledgment. Initial drafts of the Acknowledgment would have required all of MHCS's shareholders to sign, but that requirement was eventually deleted. It was replaced with a single signature block for McGowen to sign for MHCS as MHCS's president. Both Commerce and McGowen believed that the signed Acknowledgment sufficed to, among other things, bind MHCS to (1) "acknowledge[] and consent[] to the existence, effectiveness[,] and enforceability of the Pledge," (2) "acknowledge[] and consent[] to the transfer of [McGowen's] shares of stock . . . to Commerce" if Commerce "exercise[d] its rights under the Pledge," and (3) not amend MHCS's shareholder agreement without Commerce's approval. *Id.* at 175. McGowen signed the Pledge and Acknowledgment on March 30, 2011, without the consent or even knowledge of MHCS's other shareholders.

At the time McGowen signed the Pledge and Acknowledgment, MHCS's shareholder agreement provided for retirement and stock redemption when a shareholder turned 65 years old. Under the original shareholder agreement, MHCS's board of directors could vote to allow a shareholder who was older than 65 years old to continue being a shareholder. But MHCS altered the shareholder agreement in 2012. The new shareholder agreement provided for mandatory retirement when a shareholder turned 67 years old—without an exemption for board-approved shareholders—and the company would still redeem the shareholder's stock.

Several years passed without incident, until McGowen turned 67 years old. In mid-2018, MHCS redeemed McGowen's shares at the end of the company's fiscal year. In January 2019, Commerce sent a letter to MHCS threatening to sue the accounting firm for violating the Acknowledgment and Commerce's rights to McGowen's shares of stock. According to Commerce, MHCS violated the Acknowledgment by altering the shareholder agreement and redeeming McGowen's shares, among other violations. MHCS responded by seeking a declaratory judgment

in federal district court that the Pledge was unenforceable. MHCS argued that the Pledge was illegal under Iowa law and therefore unenforceable by Commerce against MHCS and that McGowen did not have actual or apparent authority to enter the Acknowledgment on MHCS's behalf. Commerce made counterclaims against MHCS for breach of contract, negligent misrepresentation, and fraudulent misrepresentation.

Both parties moved for summary judgment. The district court first determined that MHCS had standing to seek the declaratory judgment. Second, it reasoned that the Pledge was illegal and void under Iowa law. Third, it found that McGowen did not have actual or apparent authority to enter into the Acknowledgment. Then, it determined that Commerce's counterclaims failed for essentially the same reasons. As a result, the district court entered judgment in favor of MHCS, granting its motion for summary judgment, denying Commerce's motion, and dismissing Commerce's claims against MHCS. Commerce appeals the district court's order.

## II. *Discussion*

On appeal, Commerce makes three arguments. First, it asserts that MHCS lacks standing to seek a declaratory judgment regarding the Pledge. Second, it argues that the Pledge and Acknowledgment are legal under Iowa law. Third, it claims that McGowen had actual and apparent authority to enter into the Acknowledgment on MHCS's behalf.

### A. *Standing*

MHCS, as plaintiff, must show standing for its cause of action. The existence of a plaintiff's Article III standing is a jurisdictional prerequisite, and we will not reach the merits if the plaintiff does not have standing. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1046 (8th Cir. 2020). We review the issue of standing de novo. *Jones*

*v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006). In diversity cases,[2] the plaintiff must not only "meet[] the 'case or controversy' requirements of [A]rticle III of the Constitution [but] also [must have] standing to sue under the relevant state law." *W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 836 (8th Cir. 2015) (quoting *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998)). Iowa law governs this dispute.

Under Iowa law, "[a] plaintiff must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected." *Godfrey v. State*, 752 N.W.2d 413, 418 (Iowa 2008) (cleaned up). But these two elements "do not fully capture" Iowa's standing doctrine. *Id.* For the full picture, Iowa courts "have frequently supplemented and elaborated on these elements by drawing on the federal law on standing." *Id.* "In fact, [Iowa] doctrine on standing parallels the federal doctrine, even though standing under federal law is fundamentally derived from [federal] constitutional strictures not directly found in the Iowa Constitution." *Id.*

A plaintiff seeking federal jurisdiction must establish the three Article III standing requirements: "(1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sanzone*, 954 F.3d at 1046 (cleaned up). There is an injury in fact if the alleged injury is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Traceability requires proof of causation, a showing that the injury resulted from the actions of the defendant and not from the independent

---

[2]"[T]he federal Declaratory Judgment Act . . . is a procedural statute, not a jurisdictional statute," so a federal court must have an independent basis for federal jurisdiction, such as diversity or federal-question jurisdiction. *Missouri ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1334 (8th Cir. 1997). We have diversity jurisdiction in this case.

action of some third party not before the court"—that is, the injury is "fairly traceable to the challenged action of the defendant." *Miller v. Thurston*, 967 F.3d 727, 734, 735 (8th Cir. 2020) (cleaned up).

Plaintiffs seeking a declaratory judgment under 28 U.S.C. § 2201 must meet these same Article III requirements. *See Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012); *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). But due to the nature of declaratory judgments, "the difference between an abstract question and an Article III case or controversy 'is necessarily one of degree.'" *Maytag Corp.*, 687 F.3d at 1081 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co.*, 312 U.S. at 273).

On these facts, we conclude MHCS has standing to seek a declaratory judgment regarding the Pledge. Commerce argues that MHCS lacks standing because MHCS is not a party to the Pledge, and thus, Commerce has not sought to enforce the Pledge against MHCS. While it is true that MHCS is alleged to be a party only to the Acknowledgment, Commerce misapprehends Article III standing.

First, MHCS has shown an injury in fact. Commerce threatened to sue MHCS for MHCS's alleged failure to abide by the requirements in the Acknowledgment that McGowen allegedly entered it into. The Acknowledgment and the Pledge are inextricably intertwined. For example, under the Acknowledgment, MHCS supposedly recognized the enforceability of the Pledge that McGowen signed and agreed to allow Commerce to exercise rights related to MHCS stock that could be transferred to Commerce from McGowen under the Pledge. Without the Pledge,

Commerce's threat of enforcing the Acknowledgment would be hollow. Thus, the Pledge has caused a concrete and particularized injury that is imminent due to Commerce's threatened enforcement of the Acknowledgment.

Second, MHCS has shown traceability. The entirety of the legal dispute between the parties is, at its root, dependent on the Pledge; Commerce could not sue MHCS under the Acknowledgment unless Commerce had obtained a right to McGowen's shares under the Pledge. Thus, the attempted enforcement of the Acknowledgment (which is dependant on the Pledge) establishes the requisite causation—that MHCS's injury is fairly traceable to Commerce.

Third, MHCS has shown redressability. Obtaining a declaratory judgment that the Pledge is unenforceable will remedy MHCS's injury because the Acknowledgment is so connected to the Pledge that it cannot stand without the Pledge; without the Pledge, the threat of enforcement of the Acknowledgment dissolves.

## B. *Summary Judgment*

We review the grant of summary judgment de novo. *E.g.*, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate when the movant shows there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If there is a genuine dispute, we view the facts in the light most favorable to the nonmovant. *Torgerson*, 643 F.3d at 1042. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). To show a genuine dispute, the nonmovant must identify "specific facts" that are in dispute, thus "show[ing] that there is [more than] some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986)). If, taking the record as a whole, a reasonable fact finder could not find for the nonmovant, there is no genuine dispute of material fact. *Id.*

### 1. *Legality of the Pledge*

Under Iowa law, a shareholder cannot make a voluntary transfer[3] of shares in a professional corporation unless both of the following are true: (1) the transfer is to the professional corporation to which the shares belong or to an individual who is licensed to practice in Iowa in the same profession the corporation is authorized to practice, and (2) the transfer is authorized by the shareholders. Iowa Code § 496C.11(1)–(2). There is no evidence that the Pledge can meet these requirements.[4] "It is well-established Iowa law that contracts made in contravention of a statute are void . . . ." *Bank of the W. v. Kline*, 782 N.W.2d 453, 462 (Iowa 2010). And it is the "long-standing rule" in Iowa to not enforce such contracts. *Mlynarik v. Bergantzel*, 675 N.W.2d 584, 587 (Iowa 2004).

By extension, the Acknowledgment is unenforceable against MHCS. The Iowa Supreme Court has stated that "where [a] contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it." *Boardman v. Thompson*, 25 Iowa 487, 503 (1868). We have likewise explained that "[w]here a contract grows immediately out of and is connected with a prior illegal contract, the illegality of such prior contract will enter into the new and render it illegal." *Horbach v. Coyle*, 2 F.2d 702, 707 (8th Cir. 1924) (applying Nebraska law). Even "[a] new agreement, [if] in furtherance of or for the purpose of

---

[3]A "'[v]oluntary transfer' includes any . . . pledge." Iowa Code § 496C.2(7).

[4]*See also* Iowa Code § 496C.10(1) ("Shares of a professional corporation may be issued . . . only to *individuals* . . . ." (emphasis added)); Iowa Office of the Att'y Gen., Opinion No. 86-7-1(L), 1986 WL 627785 (July 8, 1986) (explaining that § 496.10(1)'s use of "[t]he word 'individual' in its plain, ordinary and generally accepted meaning does not include a corporation").

carrying into effect any unexecuted provisions of a previous illegal agreement[,] is likewise illegal and void." *Id.* The rule that a prior illegal contract will taint a subsequent contract when the two are closely connected is well established.[5]

As we have explained above, the Pledge and the Acknowledgment are tightly intertwined. The facts here convince us that the Pledge's illegality infects the Acknowledgment.

### B. *McGowen's Authority to Enter the Acknowledgment*

Even if the Pledge's illegality did not infect the Acknowledgment, MHCS would still not be bound by the Acknowledgment because McGowen did not have the authority to enter into it on MHCS's behalf. Commerce's assertion of McGowen's authority places upon it the burden to "prove [an agency relationship] exists by a preponderance of the evidence." *Frontier Leasing Corp. v. Links Eng'g, LLC*, 781 N.W.2d 772, 776 (Iowa 2010). There are two broad categories of authority in agency: actual and apparent. *E.g.*, *id.* McGowen had neither.

### 1. *Actual Authority*

"[A]ctual authority examines the principal's communications to the agent." *Id.* To confer actual authority on an agent, the "principal [must] intentionally confer[] authority . . . by writing or through other conduct which, reasonably interpreted, allows the agent to believe that he has the power to act." *Id.* (emphasis omitted)

---

[5]*See* 17A C.J.S. *Contracts* § 388 (June 2021 update) ("Where a contract grows immediately out of, and is connected with, a prior illegal contract, the illegality of the prior contract enters into the new contract and renders it illegal."); 8 *Williston on Contracts* § 19:11 (4th ed. 2021) ("A contract which in itself is not unlawful either in what it promises or in the consideration for the promise may nevertheless be rendered void as against public policy as part of a general scheme to bring about an unlawful result."); 17A Am. Jur. 2d *Contracts* § 299 (2d ed. 2021) ("If an agreement grows immediately out of, or is connected with, an illegal or immoral act or agreement, a court cannot lend its aid to enforce it.").

(quoting *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 493 (Iowa 2000)). Express actual authority exists if the principal has given "specific instructions . . . in setting out [the agent's] duties." *Id.* (quoting *Hendricks*, 609 N.W.2d at 493). Implied actual authority is proven by circumstantial evidence. *Id.*

There is no evidence that MHCS expressly authorized McGowen to enter the Acknowledgment on MHCS's behalf. MHCS's bylaws authorize the president to "perform all duties incident to the office of president and such other duties as may be prescribed by the bylaws or by the board of directors from time to time." J.A. at 221. Entering an acknowledgment addressing the validity of a personal loan made by a stockholder is not incident to the office of president of an accounting firm. Moreover, MCHS's board of directors never authorized McGowen to enter into the Acknowledgment or other similar agreements. Additionally, McGowen's status as one of multiple shareholders did not provide him express actual authority to enter into the Acknowledgment even for his own shares. The bylaws expressly give shareholders power only to vote by majorities and then only during certain specified meetings. No power is given to a single shareholder to bind MHCS to a contract.

Likewise, McGowen did not have implied actual authority. "[A] president's implied authority is limited to actions incidental to his corporate duties and the president's actions must be within the ordinary course of the business." *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 102 (Iowa 2011). Thus, Iowa has explained that a president is not presumed to have implied authority "to bind a corporation to the payment of a promissory note," unless such power "has been intrusted to his management and control." *Id.* (quoting *Citizens' Bank v. Pub. Drug Co.*, 181 N.W. 274, 277 (Iowa 1921)). The same is true here. Entering into the Acknowledgment of the Pledge of a personal loan was not incidental to McGowen's express powers as president of MHCS, and he had not been given any additional authority that would have conferred such power. Nor was it in MHCS's ordinary course of business to acknowledge shareholders entering into personal loans by collateralizing their shares

-10-

of stock in MHCS. McGowen's position as a voting shareholder did not grant him any incidental powers to enter into the Acknowledgment, and thus, he did not have implied actual authority as a shareholder.

Commerce also touts a "comfort letter" that MHCS sent to Commerce written by its treasurer concerning its purchase of a judgment against McGowen by a different lender—Commercial Loan Solutions III, LLC. That purchase placed MHCS in the position of McGowen's judgment creditor with the same rights, including the right of acceleration. In that letter, MHCS states that it was "aware of the agreement [McGowen] ha[d] with Commerce . . . to pay the bank a portion of his bonus from [MHCS] on a yearly basis." J.A. at 323. MHCS essentially promised not to use its acceleration rights to affect McGowen's repayment obligation. This letter has no bearing on McGowen's actual authority to enter the Acknowledgment for three reasons: (1) the letter only refers to a personal agreement between McGowen and Commerce, and it has nothing to do with the Acknowledgment; (2) the letter was sent three years *after* McGowen signed the Acknowledgment; and (3) the letter did not explicitly or implicitly grant McGowen authority to enter into agreements like the Acknowledgment or ratify prior entry.

### 2. *Apparent Authority*

"Apparent authority is authority the principal has knowingly permitted or held the agent out as possessing. Apparent authority focuses on the principal's communications to the third party. In other words, apparent authority must be determined by what the principal does, rather than by any acts of the agent." *Frontier Leasing*, 781 N.W.2d at 776 (cleaned up). Commerce argues that McGowen's representations about his own authority to enter into the Acknowledgment doubled as representations by MHCS because McGowen was president of the company. Commerce asserts that "there is a fact issue as to whether [McGowen] had apparent authority to sign the Acknowledgment on behalf of MHCS." Appellant's Br. at 27. Yet, it cites no law for the proposition that McGowen's own representations could

establish his apparent authority. The absence of supporting law shows that this is not a genuine dispute of a material fact. *See Torgerson*, 643 F.3d at 1042.

Commerce ignores that apparent authority is determined by the principal's actions, "rather than by any acts of the agent." *Frontier Leasing*, 781 N.W.2d at 776 (quoting *Magnusson Agency v. Pub. Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 26 (Iowa 1997)). Thus, Commerce cannot establish apparent authority by pointing to actions taken by the very agent it seeks to establish has apparent authority. To allow otherwise would allow agents to define their own scope of authority for apparent-authority purposes and remove the "focus[] on the principal's communications to the third party." *Id.* Commerce has not and cannot point to any evidence, other than McGowen's own representations, that MHCS caused Commerce to believe that McGowen had authority to sign the Acknowledgment.[6]

### III. *Conclusion*

Therefore, we affirm the district court.

_____

---

[6]For the same reasons as with actual authority, the comfort letter has no bearing on McGowen's apparent authority to enter the Acknowledgment.