# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1916

_____

Melissa Wanna, on behalf of herself individually and on behalf of all others
similarly situated

*Plaintiff - Appellant*

v.

RELX Group, PLC; Reed Elsevier, Inc., doing business as LexisNexis; RELX,
Inc., doing business as LexisNexis; LexisNexis Risk Solutions, Inc.; LexisNexis
Risk Solutions FL, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 18, 2025
Filed: July 10, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Melissa Wanna sued RELX Group, PLC, Reed Elsevier, Inc., RELX, Inc.,
LexisNexis Risk Solutions, Inc., and LexisNexis Risk Solutions FL, Inc. (together,
"Lexis"), alleging Lexis violated the Fair Credit Reporting Act ("FCRA"), Driver's
Privacy Protection Act ("DPPA"), and the federal Racketeer Influenced and Corrupt

Organizations Act ("RICO"). She also advanced several Minnesota state law claims. Lexis moved to dismiss Wanna's claims and argued Wanna could not recover because her claims depended on a nonexistent agency relationship between itself and MyLife.com Inc. ("MyLife"), a company that collected public information about Wanna and offered it for sale. The district court[1] concluded MyLife was not Lexis's agent and dismissed Wanna's claims. We affirm.

## I.    BACKGROUND

Melissa Wanna searched for her name online and discovered her profile on MyLife, an information broker that creates "reputation scores" for individuals using public records. MyLife sourced most of those records from Lexis. Wanna's profile contained a poor reputation score and ominous references to court records. MyLife offered to provide details or remove the profile for a fee. Believing she lost employment opportunities because of her MyLife profile, Wanna filed a putative class action in federal court.

Because MyLife had filed for bankruptcy and was subject to a bankruptcy stay before she commenced her suit, Wanna named five Lexis entities as defendants. She alleged Lexis participated in an extortion scheme by sharing her information with MyLife. She contends that when Lexis shared her information with MyLife it violated the FCRA, DPPA, and federal RICO act. Wanna also asserted several Minnesota consumer-protection claims, a common law defamation claim, and a civil conspiracy claim.

Lexis moved to dismiss Wanna's claims on the ground that it was not responsible for MyLife's conduct. Lexis managed its relationship with MyLife using a series of data-licensing agreements. Only one of the named Lexis entities,

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

LexisNexis Risk Solutions FL, Inc., was a point of contact with MyLife and party to the most recent data-licensing agreement. The agreement provided in relevant part:

> The Parties will perform their obligations hereunder as independent contractors. Nothing contained in this Agreement shall be deemed to create any association, partnership, joint venture, or relationship of principal and agent or master and servant between the Parties.

Based on the disclaimer in the data-licensing agreement, the district court granted Lexis's motion to dismiss. Wanna's federal claims can succeed only if Lexis is liable for MyLife's actions as MyLife's principal in an agency relationship. Since Wanna did not plead such a relationship, the district court concluded the federal claims failed. While the district court could have exercised supplemental jurisdiction over Wanna's state law claims, it declined to do so and dismissed them without prejudice.

Wanna appeals,[2] contending Lexis was responsible for MyLife's actions. She seeks reversal of the district court's order dismissing her claims.

## II.    DISCUSSION

We review a district court's grant of a motion to dismiss *de novo*. Secura Ins. Co. v. Deere & Co., 101 F.4th 983, 986 (8th Cir. 2024). When a district court could have exercised supplemental jurisdiction but declined to do so, we review its decision for abuse of discretion. Hunter v. Page Cnty., 102 F.4th 853, 869 (8th Cir. 2024).

Wanna's four federal claims depend on an agency relationship between Lexis and MyLife. Her two FCRA claims require her to identify a "consumer reporting

---

[2]The Clerk is directed to unseal the briefs in this case, as the parties did not register an objection to unsealing in response to the Court's order to show cause dated March 19, 2025.

agency" ("CRA") as a defendant. 15 U.S.C. § 1681a(f). While MyLife could be a CRA, because it created consumer reports, Lexis does not qualify as a CRA because it does not collect or evaluate "consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." Id. Wanna's DPPA and RICO claims have the same issue. Both claims require proof of tortious conduct, and Wanna's theory of tortious conduct turns on MyLife's actions rather than Lexis's actions. Her DPPA claim requires evidence someone "knowingly obtain[ed], disclose[d] or use[d] personal information, from a motor vehicle record" for an impermissible purpose. 18 U.S.C. § 2724(a). Likewise, a cognizable claim under RICO requires a continuous pattern of racketeering activity, which is one posing a threat of continued criminal activity. Crest Const. II, Inc. v. Doe, 660 F.3d 346, 354–55 (8th Cir. 2011). Even if we assume Wanna could prove an impermissible purpose and threat of continued criminal activity, the only allegations she makes are that MyLife used its information to extort her and other individuals. She makes no allegations of any such conduct against Lexis.

The district court dismissed Wanna's federal claims with prejudice because Wanna failed to plead facts demonstrating MyLife was Lexis's agent.[3] In the district court, Wanna contended MyLife had actual authority to act on Lexis's behalf. But actual authority must be granted. New Millennium Consulting, Inc. v. United HealthCare Servs., Inc., 695 F.3d 854, 857 (8th Cir. 2012). An entity does so in one of two ways: it may either grant actual authority expressly or it may impliedly grant it as a power "incidental and necessary to carry out the express authority." Radiance Cap. Receivables Eighteen, LLC v. Concannon, 920 F.3d 552, 558 (8th Cir. 2019) (citation omitted) (examining Missouri's approach); see also McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank, 11 F.4th 702, 711 (8th Cir. 2021) (recounting Iowa's analogous approach).

---

[3]For the first time on appeal, Wanna contends she has viable claims premised upon a vicarious liability theory contained in Section 876 of the Restatement (Second) of Torts. She forfeited this argument because she did not present it to the district court. Dreith v. City of St. Louis, 55 F.4th 1145, 1149 (8th Cir. 2022).

MyLife lacked actual authority to act on Lexis's behalf under the express terms of their data-licensing agreement. See New Millennium Consulting, Inc., 695 F.3d at 857. Although MyLife operated an independent business and relied on Lexis to sell information used in its business, Lexis and MyLife had no relationship beyond those arm's length transactions. The evidence in the record shows that Lexis did not grant MyLife actual authority to act as its agent, and Wanna has alleged no facts implying actual authority where none was expressly granted.

Courts have recognized that disclaimers may occasionally fail to preclude an agency relationship from arising by way of apparent authority. See, e.g., Bd. of Trade of City of Chicago v. Hammond Elevator Co., 198 U.S. 424, 437 (1905) (concluding that "correspondents" who relayed their customers' stock orders were their customers' agents despite a contractual disclaimer). However, MyLife did not have apparent authority to act on Lexis's behalf. Apparent authority arises only if "the alleged principal affirmatively, intentionally, or by lack of ordinary care caused third persons to act upon the apparent agency." Lustgraaf v. Behrens, 619 F.3d 867, 882 (8th Cir. 2010) (cleaned up) (generalizing based on three states' approaches). Wanna never pled Lexis held MyLife out as its agent, or she believed MyLife acted in Lexis's stead for other reasons. Instead, she hinges her apparent authority argument on the functional ties between Lexis and MyLife: Lexis offered information for sale, and it knew it was selling to MyLife. Those facts are insufficient to show Wanna understood MyLife to be Lexis's agent and acted on that understanding.

Wanna also contends Lexis ratified MyLife's actions. An agency relationship may arise when one entity ratifies another's unauthorized acts. Newman v. Schiff, 778 F.2d 460, 467 (8th Cir. 1985) (summarizing one state's approach); see also Restatement (Third) of Agency § 4.01 (laying out a similar approach). A principal need only agree "to be bound by the agent's action" to ratify another entity's actions. Newman, 778 F.2d at 467. Wanna has not connected Lexis with the specific uses to which MyLife put data purchased from Lexis, or any facts suggesting Lexis approved of those uses. Given these deficiencies, Wanna cannot demonstrate

MyLife was Lexis's agent under any theory of agency. The district court did not err when it dismissed her federal claims.

The district court declined to exercise supplemental jurisdiction over Wanna's state law claims after it dismissed her federal claims. When a district court dismisses all the claims over which it has original jurisdiction, it is usually appropriate to decline supplemental jurisdiction. Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Wanna's case is no exception. The district court did not abuse its discretion when it dismissed her state law claims without prejudice after declining to exercise jurisdiction over them.

III.   CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.

_____